■ In the Matter of DIANE BERNI et al., Appellants, v. ADELE LEONARD, as Executive Directrix of the Nassau County Civil Service Commission, et al., Respondents.— In a proceeding pursuant to article 78 of the CPLR to compel respondents to cancel two promotion examinations, one for the position of Police Sergeant and the other for that of Policewoman Sergeant, petitioners appeal from a judgment of the Supreme Court Nassau County, dated March 28, 1972, which denied the application. Judgment affirmed, without costs. No opinion. Martuscello, Acting P. J., Gulotta, Brennan and Benjamin, JJ., concur; Shapiro, J., dissents and votes to reverse and to grant the application, with the following memorandum: Petitioners are employed as police*women* in the respondent Nassau County Police Department. They seek admission to a promotion examination for police sergeant. One of the requisites for taking that examination is that the candidate shall have served as a policeman for four years immediately prior to the examination. It seems to be undenied that petitioners meet all other necessary qualifications except that, as policewomen, their required four years of service immediately prior to taking the examination were not as police patrolmen but as policewomen. The announcement that the promotion examination for *police sergeant* was to be given on April 29, 1972 was accompanied by an announcement of a second promotion examination, to be given on the same date, for *policewoman sergeant*. The latter examination is described by the respondent Police Commissioner as "identical" in content with that for police sergeant and as "similar" by the

Executive Director of the Nassau County Civil Service Commission. The salaries for both positions are identical. It appears, however, that there are only two openings for the position of policewoman sergeant, while an undisclosed (but apparently much larger) number of openings are available for police sergeant. Seven of the total of 28 policewomen in the Police Department have applied to take the policewoman sergeant examination, while 1,850 patrolmen out of an undisclosed total have filed for the police sergeant examination. From 1968 to April 13, 1972 "268 Nassau County policemen have been promoted to the position of police sergeant and, of that number, 240 have been asigned to the patrol force" and in 1972 65 policemen were promoted to sergeant, 63 of them being assigned to the patrol force. It thus seems crystal clear that in the future there will almost certainly be far more openings for police sergeants than for policewoman sergeants. After setting forth at some length the differences between the duties assigned to police patrolmen as distinguished from policewomen, Police Commissioner Frank, in his answering affidavit (without discussing the more relevant issue of the differences, *if any*, between the duties assigned to police sergeants and policewomen sergeants), asserts: "It is clear from the aforementioned differences in duties between police patrolmen and policewomen that separate lines of promotion must be established. To allow policewomen to be promoted to the position of police sergeant would create a chaotic situation within the Nassau County Police Department. Their training and experience as well as their physiological makeup would make it impossible for them to perform the general functions necessary to fill the regular position of police sergeant as supervisors of patrolmen." The affidavit of the Executive Director of the Nassau County Civil Service Commission makes no mention of resultant "chaotic" situations within the Department. It stresses, instead, the fact that a policewoman sergeant's duties of supervision, instruction and assistance of policewomen include supervision of what they do, investigations involving neglected, abused or delinquent children, and inspection of disorderly and suspicious premises which may be frequented by women and minors, whereas a police sergeant's duties, which she describes as "far more general and encompassing", include "assistance and instruction of patrolmen in the discharge of their duties, the observance of conditions at police posts, inspection of department vehicles and equipment assigned to patrolmen for serviceability, cleanliness and accuracy and the direction and performance of criminal investigations." Possibly recognizing that the foregoing list of duties of a police sergeant includes no duty that a woman may not be able to do as well as or perhaps even better than a man, the Executive Director's affidavit then returns to a discussion of the differences between the duties of policewomen and policemen in terms of policewomen dealing primarily with women and children, not dealing with enforcement of the Vehicle and Traffic Law and not traveling in patrol cars, whereas the contrary is the case with patrolmen, and policewomen not having to pass as strenuous physical strength and agility tests as patrolmen to qualify for their respective positions. *But there is no claim made that these requirements are required or necessary for filling the position and carrying out the duties of police sergeant as distinguished from that of policeman.* The typical duties of a police sergeant, set forth in an exhibit to the Executive Director's affidavit in support of respondents' answer, states that a police sergeant supervises the activities of patrolmen on an assigned shift within the command to which he is attached and performs related duties as required. It states also that, under supervision, he plans, directs and organizes the activities of the patrolmen under his control. Typical duties of the position are listed as assisting and instructing patrol-

men in the discharge of their duties, visiting and inspecting posts to observe conditions and the manner in which patrol duty is performed, reviewing reports submitted by patrolmen, inspecting departmental vehicles and equipment assigned to patrolmen for serviceability, cleanliness and accuracy of speedometer readings, preparing daily reports of activities during his assigned shift and directing and performing criminal investigations as assigned. *The qualifications listed are identical with those required for policewoman sergeant, except that there are added a requirement of knowledge of traffic control and an ability to transmit complex oral and written instructions by means of radio and teletype equipment.* It seems obvious that such abilities are by no means limited to males or that they require the greater strength which is allegedly a characteristic of that sex. With certain stated exceptions, the opportunity to obtain employment without discrimination because of sex is a civil right under section 291 of the Executive Law. Such discrimination may also be barred under subdivision (a) of section 703 of the Civil Rights Act of 1964 (U. S. Code, tit. 42, § 2000e-2, subd. [a]) and the requirements of that section apply to police departments (*Mize* v. *State Div. of Human Rights*, 38 A D 2d 278). The exception in the Executive Law (§ 296, subd. 1, par. [d]) and in the Civil Service Law (§ 50, subd. 7) permits discrimination where the sex or other characteristic is a bona fide occupational qualification for the position. Therefore the legality of respondents' position in barring petitioners from taking the examination for police sergeant depends on whether *respondents* have demonstrated that the requirement of being a male and of having served for four years as a patrolman (rather than as a policewoman) is a bona fide occupational qualification for the position of police sergeant. In determining what is a bona fide occupational qualification sufficient to permit the discrimination sanctioned by title VII of the Civil Rights Act of 1964 the Federal courts have consistently required that the exception be affirmatively established by the party asserting its applicability (*Weeks* v. *Southern Bell Tel. & Tel. Co.* 408 F. 2d 228; *Bowe* v. *Colgate-Palmolive Co.*, 416 F. 2d 711; *Cheatwood* v. *South Cent. Bell Tel. & Tel. Co.*, 303 F. Supp. 754). This view was adopted in *New York State Div. of Human Rights* v. *New York-Pennsylvania Professional Baseball League* (36 A D 2d 364) in which the petitioners (a baseball league and others) unsuccessfully contended that the male sex is a "bona fide occupational qualification" under section 296 (subd. 1, par. [d]) of the Executive Law and section 703 (subd. [e]) of the Civil Rights Act of 1964 (U. S. Code, tit. 42, § 2000e-2, subd. [e]) for the position of baseball umpire. The court said (pp. 367-368): "The courts have given this provision a narrow construction. In *Weeks* v. *Southern Bell Tel. & Tel. Co.* (*supra*, p. 235) the Court of Appeals for the Fifth Circuit stated: 'We hold that in order to rely on the bona fide occupational qualification exception an employer has the burden of proving that he had reasonable cause to believe, that is, a factual basis for believing, that all or substantially all women would be unable to perform safely and efficiently the duties of the job involved.'" The court also noted (p. 368) that the guidelines of the Equal Employment Opportunity Commission (Code of Fed. Reg., tit. 29, § 1604.1, subd. [a]) (the Federal agency which administers the anti-discrimination provisions of title VII [*supra*]), which guidelines the Federal courts have held are entitled to "great deference" (*Udall* v. *Tallman*, 380 U. S. 1, 16; *Phillips* v. *Martin Marietta Corp.*, 400 U. S. 542, [concurring opn. by Marshall, J.]; *Griggs* v. *Duke Power Co.*, 401 U. S. 424, 434; *Weeks* v. *Southern Bell Tel. & Tel. Co.*, 408 F. Supp. 228, *supra*; *Sprogis* v. *United Air Lines*, 444 F. 2d 1194, 1198), "reject the proposition that an employer can refuse 'to hire an individual based on stereo-

typed characterizations of the sexes' (Code of Fed. Reg., tit. 29, § 1604.1, subd. [a], par. [1], subpar. [ii]) " and that "the exception is primarily to apply 'where it is necessary for the purpose of authenticity or genuineness * * * i.e. an actor or actress' (Code of Fed. Reg., tit. 29, § 1604.1, subd. [a], par. [2])." Dealing with a class action brought by a group of men suing their employer, an airline, because the latter had violated the 1964 Civil Rights Act by refusing to employ them as cabin attendants by reason of their sex, the United States Court of Appeals for the Fifth Circuit ruled in favor of the plaintiffs (*Diaz* v. *Pan Amer. World Airways,* 442 F. 2d 385). It rejected the justifications advanced by the defendant, and accepted by the trial court, (1) that the airline's passengers overwhelmingly preferred to be served by female stewardesses and (2) that since, according to expert testimony of a psychiatrist, an airplane cabin is a special unique environment in which the carrier must take account of special psychological needs of its passengers, and since females are better for this, the employer could ease the job of recruiting cabin attendants if it could use as its best available tool for screening out applicants the entire class of those most likely to be unsatisfactory, males, even though there might be a few males who could meet the special psychological needs of the employer's passengers. The Court of Appeals stated that the test of the statute is "reasonably necessary", not business convenience, citing the test laid down in *Weeks* (*supra*), quoted above. The court stated that it did not agree that all or substantially all men "have been shown to be inadequate " (p. 388). It thereupon reversed the judgment of the trial court and determined that the employer had not established a bona fide occupational qualification justifying employment of women only. In *Ridinger* v. *General Motors Corp.* (325 F. Supp. 1089, 1096) the court stated that the statutory exception for a bona fide occupational qualification has been given a limited construction by the courts to avoid frustrating the purposes of the statute, adding that a bona fide occupational qualification is not established by an assumption or stereotyped characterization that very few women could perform a particular job. In my view it is just such a stereotyped characterization that is the basis for the ruling here under attack. Police Commissioner Frank, presenting no factual basis for believing that all police women with four years' experience as such would be unable to perform safely and efficiently the duties of police sergeant, merely says, "To allow policewomen to be promoted to the position of police sergeant would create a chaotic situation within the Nassau County Police Department", adding the conclusory statement, with no factual basis therefor, that "Their training and experience as well as their physiological makeup would make it impossible for them to perform the general functions necessary to fill the regular position of police sergeant as supervisors of patrolmen." He points to no duties of police sergeants which women could not perform because of their physical makeup; and the fact that the promotion examinations for police sergeant and for policewoman sergeant are identical negative and destroy his claim of differences in duties. The following statement of the court in *Matter of Shpritzer* v. *Lang* (17 A D 2d 285, 290, affd. 13 N Y 2d 744)* is a clear answer to this unsubstantiated judgment: "Nothing in the broad definition of the duties of sergeant (Rules and Procedures of the Police Dept., par. 16.3) are [sic] clearly impossible of performance by policewomen because of sex. There are practical physical problems which warrant

---

* The Court of Appeals, in stating that it agreed with the opinion of the Appellate Division, added: "except that we do not reach the alleged constitutional question as to equal protection of the laws " (p. 746).

reasonable distinctions because of facilities, and even the very nature of a particular problem may necessitate a uniquely desirable approach, independent of considerations of sex. The Commissioner remains vested with discretionary power to use his best judgment. We hold no more than that petitioner and others similarly situated cannot be arbitrarily denied the right to take the examination for sergeant because of their sex, and no reasonable grounds have been shown to warrant the 'sex selection' evidenced. From the record women are serving as superior police officers in other cities of this country and in London as well. We would suppose, in the absence of contrary evidence, that the problems of law enforcement officers in such cities differ more in degree than in kind from those encountered here. The capacity and ability of females to hold a superior office in a police department has been demonstrated by the experience of other cities. We conclude that the denial of eligibility is solely because of sex, is unwarranted in law and, in light of present-day conditions constitutes an abuse of discretion ". Implicit in the arguments of respondents is the unspoken assumption that one cannot supervise a patrol*man* without having served as such for four years, but they present no proof of the validity of that assumption. A court may not shut its eyes to the fact that women occupy many supervisory positions in the business world and, as is noted in *Shpritzer*, in the police departments of New York City, London and other cities, where they have satisfactorily filled supervisory positions. Appellants assert in their brief, and it is not contradicted by respondents, that "many police sergeants who are in charge of patrolmen on the street, were never patrolmen in the sense of a foot patrolman or traffic squad", but had worked as patrolmen " in Identification Bureau, Scientific Investigation Bureau, Liaison work," and, as such, " saw no more street action than had the petitioners " and yet they were nevertheless " eligible for the police sergeant's test and are presently supervising men on the street." Special Term, while citing *Shpritzer*, distinguished it, among other reasons, because in New York City policewomen were completely excluded from promotion to the rank of sergeant whereas in our case policewomen can be promoted to policewoman sergeant. This argument seems to me to be clearly specious, because petitioners here, by being denied the opportunity to take the sergeant's examination, are limited to an examination that makes them eligible for only two openings for the position of policewoman sergeant. Furthermore, and in the event of their promotion to that position, they will be limited to supervision solely of policewomen, who deal primarily with women and juveniles, whereas access to and success in the police sergeant's examination will open a much larger number of job opportunities and a more varied spectrum of supervisory work, with possibilities for further promotion. What probably makes the Police Commissioner boggle, and caused him to warn of chaos, is that the supervisory authority of all successful takers of the police sergeant's examination (including policewomen candidates if they were permitted to take the examination) would be over policemen, males. However, the bar on discrimination in employment based on sex nowhere provides that a practice of denying women who qualify for supervisory jobs the right to fill those jobs because they involve supervision over males is a proper exercise of a bona fide occupational qualification, or is not discrimination based on sex. Similarly, the argument that there is no discrimination where women are offered an examination which will qualify them to supervise women but not men, even though there is no rational basis for so limiting the positions they supervise, fails because if, in fact, this results in denial to them of an opportunity for a supervisory job for which they are qualified, the effect is still discriminatory. As Chief Justice VINSON said in

*Shelley* v. *Kraemer* (334 U. S. 1, 22), "Equal protection of the laws is not achieved through indiscriminate imposition of inequalities." I therefore dissent and vote to reverse and to grant petitioners the relief they seek. [69 Misc 2d 935.]