**Marie REYNOLDS**

v.

**Jack H. WISE et al.**

**Civ. A. No. 3–6560.**

United States District Court,
N. D. Texas,
Dallas Division.

June 27, 1973.

Findings and Conclusions April 5, 1974.

Memorandum April 22, 1974.

Edward B. Cloutman, III, Mullinax, Wells, Mauzy & Babb, Inc., Dallas, Tex., for plaintiff.

Charles D. Cabaniss, Asst. U. S. Atty., Dallas, Tex., for defendants.

## ORDER OF THE COURT AND MEMO- RANDUM OPINION

HUGHES, District Judge.

Defendants through their Motion for Reconsideration raise issues of first impression respecting the Civil Rights Act of 1964 as amended in 1972. These issues may be summarized as follows:

*First*: Is an employee of the federal government denied a right of private action for injunctive and compensatory relief?

*Second*: In a private action by an employee of the federal government seeking injunctive and compensatory relief that was filed before a final decision was rendered by a Department of Justice Equal Employment Opportunity Officer, does the subsequent entry of a final decision by that Officer restrict this court to an administrative review of the complaint rather than a de novo consideration of the alleged violation?

Each of the above are answered in the negative.

From the pleadings filed to date, plaintiff Marie Reynolds, is a female

Caucasian originally employed by the Department of Justice, Bureau of Prisons on or about April 11, 1955, at the Federal Reformatory in Chillicothe, Ohio. On October 10, 1966, she transferred to the Correctional Institute at Seagoville, Texas. The pleadings do not disclose whether plaintiff is currently employed by the Bureau of Prisons or any other federal department, bureau or agency.

The gravamen of plaintiff's complaint is that the Bureau of Prisons, acting by and through its various officials and agents, is engaged and has practiced in a course of discrimination based upon sex, in violation of the Civil Rights Act of 1964 as amended in 1972, Title 42, United States Code, Section 2000e-16. In the alternative, she alleges civil rights violations under Title 42, United States Code, Sections 1981 and 1983.

In her complaint, plaintiff asserts that male employees of the Bureau of Prisons are permitted to "rotate in jobs at the Federal Correctional Institution" thereby becoming qualified to progress to higher Civil Service ratings and, thus, higher pay classifications. Female employees, she asserts, are "frozen" at lower Civil Service ratings because they are denied the right to rotate jobs.

Plaintiff further asserts that on or about March 29, 1972, she filed a complaint with the Department of Justice Equal Employment Opportunity Officer at the Seagoville Institution. With more than 180 days having lapsed and no final decision having been entered, plaintiff filed her original complaint with this court on December 5, 1972.

An examination of the pleadings and exhibits shows that the Equal Employment Opportunity Officer entered a Recommended Decision on December 19, 1972, and a Final Decision on February 15, 1973. Plaintiff has never filed a complaint with the Equal Employment Opportunities Commission.

Defendants, represented by the United States Attorney, have filed a "Motion to Dismiss, or in the alternative, Motion for Summary Judgment." In that motion, defendants assert *inter alia* technical pleading deficiencies, failure to join an indispensable party, joinder of an improper party, unavailability of relief sought, and, in substance, a plea that this court limit its participation to a review of the "administrative record" arising from plaintiff's complaint filed with the Equal Employment Opportunity Officer. This Motion was filed on March 7, 1973.

On April 10, 1973, plaintiff was granted leave to amend her original complaint. This amendment cured the pleading defects objected to by defendants. Accordingly, defendants March 7 motion was denied and plaintiff's attorney of record was requested to draw the order.

Before a written order could be filed, defendants filed a Motion to Reconsider, which presented expressly or by inference the previously noted issues.

The Equal Employment Opportunity Act of 1972, Pub.L. 92–261, 86 Stat. 103, substantially amended the Civil Rights Act of 1964. One of the most significant amendments relates to federal employees. Under the Equal Employment Opportunity Act of 1972, certain classes of federal employees are made free from any discrimination based on race, color, religion, sex, or national origin. If plaintiff comes within the scope of federal employees covered by this Act and satisfies the procedural prerequisites, then she has a right to maintain a private action.

The pertinent section of the Act applicable to the issues before this court is section 717, 42 U.S.C.A. § 2000e-16 (1972). Section 717 clearly states that "(a) All personnel actions affecting employees . . . in executive agencies . . . as defined in section 105 of Title 5, United States Code, . . ." shall receive the benefits of this section.

Section 105, Title 5, United States Code provides that an "executive agen-

cy" includes an Executive department. Section 101, Title 5, United States Code (1970) provides that an Executive department includes the Department of Justice. Inasmuch as the Bureau of Prisons is statutorily directed to serve under the Attorney General, it functions as a part of the Department of Justice and its employees are covered, therefore, by section 717.

Section 717 establishes an enforcement procedure that permits aggrieved employees to request enforcement of Section 717. The first step is to file a complaint with the Civil Service Commission. 42 U.S.C.A. § 2000e–16(a) (1972). To facilitate this enforcement, the Civil Service Commission has designated certain persons as Equal Employment Opportunity Officers and delegated to them the responsibility of reviewing all complaints. 5 C.F.R. Section 713.204 (1973).

The second step is in the disjunctive. The claimant may either wait until a final decision is rendered on the complaint or file a civil action if the Civil Service Commission has not rendered a final decision within 180 days from the date of the filing of the complaint. 42 U.S.C.A. § 2000e–16(e) (1972).

■ Plaintiff in this cause has performed each of the prerequisites and is a person covered by Section 717 of the Act, at least according to the pleadings. Therefore, she is entitled to maintain a private action. The Act is quite explicit that if such a private action is initiated, the provisions of 42 U.S.C.A. § 2000e–5 (g) (1972) shall govern the litigation. 42 U.S.C.A. § 2000e–16(d) (1972). Under 42 U.S.C.A. § 2000e–5(g), this court is vested with jurisdiction to award relief of a limited nature upon proof of discrimination. An examination of plaintiff's pleadings shows sufficient facts and claims for relief to bring plaintiff within the scope of persons protected by Section 717 and possibly entitled to relief under 42 U.S.C.A. § 2000e–5(g) (1972). The grant of a summary judgment on this issue would be, therefore, totally improper and is hereby denied.

An analysis of Section 717 reveals two, and only two, prerequisites for maintaining a private action:

1. Filing a complaint with the Civil Service Commission, and

2. The entry of a final decision on that complaint or the passage of 180 days from the date of filing of the complaint without a final decision having been entered. 42 U.S.C.A. § 2000e–16 (1972).

■ Defendants earnestly assert that this court is limited to a review of the administrative record and cannot consider the issue of discrimination de novo. This court disagrees.

Defendants cite as authority for their argument statements by Senators Williams and Cranston made in their closing debate on the bill. While it is true that this language would normally indicate that the Senate intended for the judiciary to limit its proceeding to a review of the administrative record, there are affirmative countervailing considerations that necessitate rejection of that authority. First, the House version of the Act was adopted and not the Senate text. 2 U.S.Code Congressional and Administrative News, p. 2137 (1972). Second, the floor managers in conference expressly approved a modified provision that granted to individuals the right of private action in conformity with the House version of the Act. 2 U.S.Code Congressional and Administrative News, pp. 2179, 2182 (1972). Finally, the plain statutory language of the Act authorizes private actions without restricting the forum court to a review of the administrative record.

As supplemental authority for their argument, defendants cite this court to numerous actions by individuals conducted prior to the 1972 amendments in which the forum court was restricted to a review of the administrative record. Each such case, however, involves statutes which were by their plain statutory language subject to the Administrative Procedure Act.

Section 717 is codified as 42 U.S.C. § 2000e–16 (1972), a section of Title VII of the Civil Rights Act of 1964. Title VII is distinct from Title VI in that Title VI expressly limits judicial review to the procedures set forth in the Administrative Procedure Act. 42 U.S.C. § 2000d–2 (1970). There is no such restriction in Title VII and this court is without jurisdiction to amend the plain statutory language of the amended Act.

It is therefore ordered, adjudged and decreed that defendants "Motion to Reconsider" filed in the above styled and numbered cause on May 9, 1973, be and the same hereby is denied.

## FINDINGS AND CONCLUSIONS

In this case Marie Reynolds filed suit against Jack H. Wise, Warden of the Seagoville Correctional Institution; Norman Carlson, Head of the Bureau of Prisons; Richard Kliendienst, Attorney General of the United States and the United States alleging discrimination on the basis of sex in her employment at the Seagoville Correctional Institution in Dallas County, Texas. After a trial without a jury, and a consideration of the evidence, argument of counsel and briefs, the Court makes the following Findings of Fact and Conclusions of Law.

### Findings of Fact

1. Marie Reynolds was employed by the Bureau of Prisons on or about April 11, 1955, at the Federal Reformatory in Chillicothe, Ohio, as a GS–3 clerk and typist. She was thereafter promoted to GS–5.

2. On October 10, 1966, she was transferred by the Bureau of Prisons to the Correction Institution at Seagoville, Texas, and given the position of mailroom clerk with a grade rating of GS–5.

3. The position of mail-room clerk had previously been held by a correctional officer with a GS–7 rating. This officer had one helper inmate.

4. During the time a correctional officer was in charge of the mail room, the officer was rotated every six months for the performance of other duties. Such duties involved continuous and close contact with inmates, including counseling and supervision of their activities in the dormitories and their facilities. Pl. Ex. 1 "Description of work" of correctional officer page 1.

5. During the time plaintiff Reynolds was mail room clerk, her duties included inspecting all incoming and outgoing mail, properly handling all money mailed to inmates, and processing all official mail. Because of the adoption of open correspondence rules for inmates, the amount of time involved in the duties of mail clerk was reduced. Under this procedure, outgoing correspondence was no longer checked against approved lists of correspondents nor as closely inspected as formerly.

6. It was at this time that plaintiff Reynolds asked to have additional duties such as going to the Post Office for mail and relieving the guard at the gate during lunch hour.

7. To obtain a promotion to a higher grade, contacts with inmates were necessary. The mail room clerk was able to perform the duties of the office without the assistance of inmates and, therefore, had no supervisory contact with inmates.

8. In early 1972 the Bureau of Prisons instituted a new unit system at Seagoville under which each dormitory functioned independently. There were five unit teams handling, among other matters, all inmate supervision, classification, assignments and parole processing. Under this system, the five units had two (2) clerks who handled all the clerical work. The new procedure did not provide, however, that the mail room duties be divided between the units. These were to be performed by one individual who would have additional duties such as trips to the Post Office in Seagoville and making call out sheets for the next day. The individual assigned to the mail clerk would be a correction officer and would rotate to other duties in order to become acquainted with vari-

ous phases of inmate supervision and counseling.

9. In late March 1972, Mrs. Reynolds was called to a conference with the warden and other officials. At this meeting she was advised that she was to be transferred from the position of mail clerk to that of clerk with rating of GS–5 in the Case Management Department. She asked for, but was denied, the position of correctional officer. On March 24, 1972, she was advised by letter from the warden that she was being reassigned "to the position of Clerk-Dictating Machine, Transcriber GS–316–05 _ _ _ in the Case Management Department." This assignment was to be effective April 16, 1972. *Govt. Ex. 2(3).*

10. On March 29, 1972, Plaintiff filed a complaint with the Department of Justice Equal Employment Opportunity Officer at the Seagoville Institution. The charge was "sex discrimination on job". The complaint requested retention of her position as mail clerk with the addition of new duties, to be assigned to the job of mail clerk. In her complaint, Mrs. Reynolds likewise requested rotation "to other custodial posts within the institution." *Govt. Ex. 2(3)*

11. A complaint was mailed on plaintiff's behalf to Equal Opportunities Office, Bureau of Prisons, Washington, D. C. After more than 180 days elapsed without action by the Equal Opportunities Office, this suit was filed on December 5, 1972. *Govt. Ex. 2(3).*

12. On February 15, 1973, Mrs. Reynolds was advised by the Adjudication Officer of the Equal Opportunities Office that her complaint of discrimination had not been sustained. *Govt. Ex. 2–final decision.*

13. Correctional officers employed by the Bureau of Prisons consist of both men and women. There is no difference in the qualifications for men and women. *Govt. Ex. 4.* However, it is provided in an official Civil Service Commission report on Qualification Standards, *Pl Ex 1, page 3,* that in institutions for men, the correctional officers will be men and in institutions for women, the officers will be women.

14. At Alderson, an institution for women, approximately eight of sixty correctional officers are male, the rest being female. Male officers at Alderson are used largely for discipline purposes. They do not have regular dormitory duties and are called by female correctional officers to the dormitories only for physical assistance.

15. At Seagoville, duties of correctional officers include policing open showers, toilets and latrines in the dormitories, and shakedowns of inmates returning to the institution.

16. The head of food services at Seagoville, a woman, supervises from five to fourteen inmates. She has the responsibility for keeping order and has never had any serious difficulties. Situations she was unable to handle alone, she called for assistance from a male officer. Tasks are similar to those of correctional officers except for dormitory duties and shake-down searches.

17. Qualification Standards, Correctional Officer Series page 1 (Pl. Ex. 1) contains a description of the work of such officers as follows:

> Correctional Officers supervise and perform work concerned with the correctional treatment supervision, and custody of criminal offenders in correctional institutions or community-based treatment or rehabilitation centers. They have primary responsibility for guiding inmate conduct, supervising work details, carrying out plans for the correctional treatment and modification of attitudes of inmates, instructing and counseling inmates on institutional and personal problems, and generally insuring the custody, safety, and well-being of inmates. On occasion, Correctional Officers are required to carry firearms.

18. Plaintiff, Mrs. Reynolds, has never made a written application for the position of Correctional Officer.

## Conclusions of Law

1. This court has jurisdiction of the case. Mrs. Reynolds, as an employee within an executive agency, is entitled to bring this action. 42 U.S.C. § 2000e–16(a) (1972).

2. The policy of the Bureau of Prisons as set out in Qualification Standards, Correctional Series (Pl. Ex. 1) discriminated against women in that it provides that only males shall be appointed in institutions for men and violates 42 U.S.C. § 2000e–16(a) (1972), which prohibits sex discrimination.

3. Selective work responsibilities among correctional officers excluding from the duties of women assignment to dormitories or shake-downs is reasonable to insure privacy of inmates and does not discriminate against women. *Cf.* Hand v. Briggs, 360 F.Supp. 484 (N.D.Cal.1973).

4. The reassignment of plaintiff from her position as mail-clerk to that of clerk in the Case Management Department was intentionally based on plaintiff's sex and constituted a prima facie violation of 42 U.S.C. § 2000e–16(a) (1972). *See* Danner v. Phillips Petroleum Co., 447 F.2d 159 (5th Cir. 1971), reh. and reh. en banc den.

5. No business necessity or bona fide occupational qualification has been shown by the Government. *See* Rosenfeld v. Southern Pacific Co., 444 F.2d 1219 (9th Cir. 1971).

6. Plaintiff is entitled to reinstatement in the position of mail clerk with the assignment of additional duties at a grade rate of GS–5.

7. Having never made written application for the position of correctional officer, plaintiff is not entitled to automatic employment in that classification.

8. Defendants are ordered to make available to plaintiff the opportunity to apply for the position of correctional officer and, if application is made, are to entertain that application upon the first opening thereafter.

9. Plaintiff is entitled to recover attorney fees to be hereafter determined.

## MEMORANDUM ON ATTORNEYS FEES

At the conclusion of a trial on the merits of the above case, Findings of Fact and Conclusions of Law were filed by the Court. Therein it was provided that plaintiff was entitled to attorneys fees to be thereafter determined.

Plaintiff filed a motion to assess attorneys fees and costs together with an affidavit of counsel for time and services rendered. Defendants filed a motion to delete the award of attorneys fees.

The Court has considered the pleadings, the briefs and argument of counsel, the affidavit of counsel relating to attorneys fees, the fee schedule recommended by the Dallas Bar Association, the novelty and difficulty of the questions involved, the skill required, the importance of the case and the results obtained. The Court has likewise taken into consideration the Court's recollection of the time spent in court for trial, pretrial and appearance for docket call as well as the Court's experience with similar Title VII cases.

The Court first considered the defendant's motion to strike the award of attorneys fees and has determined that the motion should be overruled. 42 U.S.C. 2000e–5(k) provides:

> In any action or proceeding under this title [42 U.S.C. § 2000e–2000e–17] the Court, in its discretion, may allow the prevailing party _ _ _ a reasonable attorney's fee as a part of the costs.

While this provision as originally enacted did not apply in cases brought against the United States the amendment of March 24, 1972 made it applicable. 42 U.S.C. 2000e–16(d). The cases cited by the defendant in support of their contention that the award of attorneys fees was barred by the principle of sovereign immunity arose prior to the amendment of the Act and are not applicable.

According to the recollection of the Court the actual trial consumed slightly more than a day. In addition, there were appearances to answer the docket call and three pretrials for discussion of discovery and motions to dismiss.

The novelty of the case is significant. Plaintiff's complaint sought to set aside a Government classification, barring female employment as correctional officers in institutions for male inmates, which had been promulgated by the Civil Service Commission. No similar case was found by the parties or the Court.

Defendant filed two motions to dismiss and a motion to reconsider the overruling of the motions to dismiss contending that the Court's jurisdiction was limited to a review of the administrative proceedings. This was likewise a somewhat novel question which required a significant amount of time.

The judgment included declaratory and injunctive relief. The Court held that the Civil Service provisions relating to correctional officers in federal prison in which male inmates were confined discriminated against women. By reason of such holding all female employees of the Bureau of Prisons as well as the plaintiff are benefited. Plaintiff was individually awarded a favorable reclassification and job assignment. The case has significance for the public as well as female employees of the prison.

The minimum fee schedule published by the Dallas Bar Association provides for minimum legal fees at a rate of forty dollars ($40.00) per hour and two hundred fifty dollars ($250.00) per day in trial.

Plaintiff's attorney has shown competence in this and other cases in which he has appeared in this Court. He has specialized in civil rights matters, particularly in the area of equal employment. In view of this expertise and also considering the much lesser amount of time spent by the law clerk of this Court and the Judge in study and research of the law and preparation for trial it appears to the Court that the amount of time de-

voted by plaintiff's attorney to research, conferences, and briefing is excessive.

The Court has taken into consideration all the above factors and finds a reasonable fee to be five thousand dollars ($5,000.00).