QUESTION: Does a policy or regulation which excludes all female police officers from patrol duty or limits the functions performed by female officers to such areas as juvenile and rape investigations violate Title VII of the Civil Rights Act of 1964?
SUMMARY: A policy or regulation which excludes all female officers from patrol duty or limits the functions performed by female officers to such areas as juvenile and rape investigations violates Title VII of the Civil Rights Act of 1964. The statutory language and legislative history of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), et seq. (hereafter Title VII), indicates that one of the objectives of Congress in enacting Title VII was to provide an opportunity for anyone to enter the job market without being subjected to disparate treatment because of race, color, religion, sex, or national origin. Through Title VII, Congress has established a national policy that each person must be treated as an individual and not on the basis of characteristics generally, and often falsely, attributed to any racial, religious or sex group. In specific regard to claims of sex discrimination, Congress intended to strike the entire spectrum of disparate treatment of individual men and women resulting from sex stereotypes. Under Title VII, all stereotypic treatment of persons based on race, religion, or sex, whether rational or irrational, is illegal. Sprogis v. United Air Lines,444 F.2d 1194 (7th Cir. 1971). Manhart v. City of Los Angeles, Dept. of Water and Power, 387 F. Supp. 980 (D.C. Cal. 1975). If a police department limits, segregates, or classifies female employees and applicants for employment as police officers in a way which would deprive them of employment opportunities and otherwise adversely affect their status as employees because of their sex, a prima facie violation of Title VII exists. The statistical absence of women on a police force has been said to be an acceptable method of determining the existence of sex discrimination in employment cases. See Schaefer v. Tannian,394 F. Supp. 1128 (E.D.Mich. 1974). Once a prima facie case has been established, a heavy burden shifts to the defendant to show the validity of the selection device or to articulate some legitimate, nondiscriminatory reason underlying these practices. Officers for Justice v. Civil Service Comm. of San Francisco, 395 F. Supp. 378
(N.D.Cal. 1975); Wetzel v. Liberty Mutual Insurance Co.,372 F. Supp. 1146 (W.D.Pa. 1974); McDonnel Douglas Corp. v. Green,411 U.S. 792 (1973). All federal courts which have considered the issue of exclusion of women from all positions within a law enforcement agency or the selected exclusion of women from patrol or other positions within the law enforcement agency have thus far uniformly held that such exclusionary practices are not justified by any business necessity or
bona fide occupational qualification and hence are violative of Title VII. In Schaefer v. Tannian, 394 F. Supp. 1128 (E.D.Mich. 1974), the court found that the Detroit Police Department (hereafter referred to as the D.P.D.) had until 1970 utilized female police officers only in the Women's and Children's Section of the department. The policy of the D.P.D. in past years had been to exclude female officers from the entry position of patrolman. In January 1974, approximately 39 women graduated from the Criminal Justice Institute of the D.P.D., the greatest majority of whom (if not all) were assigned to the Youth Services Bureau. New policewomen hired by the D.P.D. have in the past been assigned to and continued to be predominantly assigned to the Women's Division, or, as now reorganized, the Women's and Children's Service Section and the Youth Services Bureau. In support of the limitations upon women officers, the department urged that such practices were "necessary for the safety of the women and the efficient operation of the police department," and was further justified through business necessity. However, the court found that the department had provided no facts to support a conclusion that its practices are or have been in the past necessary to the safe and efficient operation of the department and that it likewise failed to meet the burden of showing a business necessity. Accordingly, the court held, inter alia, that restricting new policewomen employees to positions in the Women's Division violated Title VII. The court, inter alia, ordered the imposition of a "quota system" upon the department which required the D.P.D. to hire at least one qualified female officer for every male officer until further ordered; ordered the D.P.D. to assign all persons who completed police training to divisions of the department without regard to sex per se; required the D.P.D. to begin immediately the use of recruiting material which stressed the equal role of men and women in the department; required the D.P.D. to inform the public that the D.P.D. would henceforth hire police officers without regard to their sex; and also extensively revised the procedures previously utilized by the D.P.D. with respect to entrance exams. In Reynolds v. Wise, 375 F. Supp. 145
(N.D. Texas 1973), the plaintiff, a female employed by the Bureau of Prisons in an all male institution, asserted that the bureau violated Title VII by "freezing" female employees at lower civil service ratings by denying them the right to rotate jobs. It had been the policy of the Civil Service Commission that in institutions for men the correctional officers would be men and in institutions for women the officers would be women. In concluding that this policy of the Bureau of Prisons violated Title VII, the court found that "no business necessity or bona fide occupational qualification has been shown by the government." Reynolds, supra, at 151, and accordingly, the defendants were, inter alia, ordered to make available to the plaintiff the opportunity to apply for the position of correctional officer and, if application is made "to entertain that application upon the first opening thereafter." Id. Additionally, the court awarded plaintiff an attorney's fee in the amount of $5,000. Reynolds, supra, at 152. Significantly, the court in Reynolds did not prohibit "selective work responsibilities among correctional officers excluding from the duties of women officers assignments to dormitories or shakedowns in order to insure the privacy of inmates." Reynolds, supra, at 151. Similarly, I am of the view that female police officers may be assigned to special units dealing with cases involving sexual battery upon females, or males assigned to units dealing with cases involving sexual battery upon males, without violating Title VII. Such a practice would guarantee the right of privacy of victims of crimes in an intimate, personal area which has been recognized as such under the Federal Constitution and would not constitute sex discrimination under Title VII. In Officers for Justice v. Civil Service Comm. of San Francisco, 395 F. Supp. 378
(N.D.Cal. 1975), the court, in enjoining the use of a height requirement and physical agility test for applicants for patrol positions on the city police force, noted that "women have historically been totally excluded from positions as patrol officers in the San Francisco Police Department" despite the presentation of evidence which indicated that . . . women have been used in police patrol work in substantial numbers nationwide, most notably in Washington, D.C. and New York City, and locally, in the California city police departments and county sheriff's offices. The court ordered the city to provide that 15 of the 40 persons in each of the first four police academy classes be women, thereby insuring that 60 female officers would be on patrol duty within 32 weeks. Also see Berni v. Leonard, 331 N.Y.S.2d 193
(Sup.Ct. 1972), aff'd, 336 N.Y.S.2d 620 (Sup.Ct. 1972); City of Schenectady v. State Division of Human Rights, 373 N.Y.S.2d 59
(Ct.App. 1975). In sum, I am of the opinion that the exclusion of women from patrol duties within a police department constitutes a violation of Title VII which cannot be justified on the grounds of business necessity or bona fide occupational qualification. Fears for the "physical safety of women" have been found to be insufficient as a matter of law to justify the exclusion. As stated by the Fifth Circuit in response to a similar contention: . . . Title VII rejects just this type of romantic paternalism as unduly Victorian and instead vests individual women with the power to decide whether or not to take on unromantic tasks. Men have always had the right to determine whether the incremental increase in remuneration for strenuous, dangerous, obnoxious, boring or unromantic tasks is worth the candle. The promise of Title VII is that women are now to be on equal footing. . . . [Weeks v. Southern Bell Telephone and Telegraph Co., 408 F.2d 228, 236 (5th Cir. 1969).]