Dennis P. BOWLING, Plaintiff,

v.

J. J. ENOMOTO et al., Defendants.

No. C 80 1635 WTS.

United States District Court,
N. D. California.

May 1, 1981.

Dennis P. Bowling, pro. per.

Thomas P. Dove, Deputy Atty. Gen., San Francisco, Cal., for defendants.

## MEMORANDUM OF DECISION

SWEIGERT, District Judge.

This is a civil rights action under Title 42 U.S.C. § 1983 by plaintiff, a California state prisoner, against defendants, the director and certain staff of the California Department of Corrections,[1] alleging violation of plaintiff's constitutional right to privacy and seeking declaratory relief and a preliminary injunction.

The matter is currently before the court on plaintiff's complaint seeking a declaratory judgment that his constitutional right to privacy is being violated at the prison in which he is incarcerated, and a preliminary injunction stopping the assignment of female corrections officers to jobs which permit them to periodically view plaintiff in various states of undress while showering, sleeping and using the toilet facilities.

The record before the court consists of the unverified complaint and the affidavits of plaintiff and two other prisoners at the California State Prison in Soledad, William Murphy and Gaylin L. Burleson.

The affidavits establish, without evidence to the contrary, that plaintiff is housed in Protective Housing Unit I of the Correctional Training Facility (Central) at Soledad, California, an all-male inmate institution. Affidavit of Dennis P. Bowling (Bowling Aff.) at 2; that plaintiff is housed in a cell approximately 6 feet by 10 feet in dimension which includes a wash basin, toilet and bed; that the cell door is solid save for four windows measuring approximately 5–½ inches by 8–½ inches; that these windows permit viewing of the entire interior of the cell, including the toilet and bed and that prison rules and regulations forbid the covering of any of the windows for any purpose at any time, so that continued, unannounced inspection may be conducted by prison officers passing the cell. Bowling Aff. at 2; Affidavit of William Murphy (Murphy Aff.) at 2; Affidavit of Gaylin L. Burleson (Burleson Aff.) at 2.

Two officers are assigned to the area encompassing plaintiff's cell continuously from 7 a. m. until 11 p. m. It is their responsibility to constantly supervise all inmates in the area, making periodic, unannounced spot-checks of inmates in their cells, and surveying inmates in the remainder of the area, including the general toilet and shower facilities which are open and visible from a large portion of the area. Bowling Aff. at 3; Murphy Aff. at 2; Burleson Aff. at 2.

During the hours from 11 p. m. to 7 a. m., a single officer is assigned to watch the area encompassing plaintiff's cell. The assigned officer is charged with making periodic inspections of the cell during the night. Bowling Aff. at 5.

The officers are rotated approximately once a month among the various assignments relating to the area in which plaintiff is housed. Of the eight officers presently included in the rotation, five are female. Bowling Aff. at 3; Murphy Aff. at 1–2; Burleson Aff: at 2.

From the uncontradicted affidavits submitted by plaintiff, it is manifest that a certain amount of the viewing of which he complains has in fact occurred, and that,

1. Since this action was filed, defendant J. J. Enomoto has been succeeded in the office of Director of the California Department of Corrections by Ruth Rushen, who presently holds that post. Another original defendant, O. A. Loggins, has been succeeded in his job as Superintendent of the California Training Facility at Soledad by Reginald Pulley, who presently holds that position.

given the physical set-up and rules of the prison, it is certain to occur again with some frequency.

Plaintiff alleges that the female officers observing him while he dresses, showers, defecates and sleeps, while in various states of undress, constitutes an unjustified invasion of his constitutional right to privacy, creating in him feelings of embarrassment and humiliation.

■ We start with the well-settled premise that there is a constitutional right to privacy. *Carey v. Population Services Int'l*, 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977); *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147, *reh. denied, Roe v. Wade*, 410 U.S. 959, 93 S.Ct. 1409, 35 L.Ed.2d 694 (1973); *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). Furthermore, the right clearly extends to the naked body. As the Ninth Circuit stated in *York v. Story*, 324 F.2d 450 (9th Cir. 1963), *cert. denied, Story v. York*, 376 U.S. 939, 84 S.Ct. 794, 11 L.Ed.2d 659 (1964). "We cannot conceive of a more basic subject of privacy than the naked body. The desire to shield one's unclothed figured (sic) from view of strangers, and particularly strangers of the opposite sex, is impelled by elementary self-respect and personal dignity." *Id.* at 455.

■ While it is true that persons convicted of crime leave many of their constitutional rights at the prison gate, they do retain such constitutional rights as are consistent with prisoner status and with governmental interests in rehabilitation and institutional security. *Pell v. Procunier*, 417 U.S. 817, 822–23, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974) (upholding certain First Amendment rights of prison inmates). Thus, plaintiff's constitutional challenge must be assessed in light of these legitimate penological concerns. *Ibid.*

Defendants do not contend that an inmate's privacy interest in his own body is inconsistent with his status as a prisoner; nor would such an argument be persuasive. Indeed, defendants themselves concede that one of the goals of the California Depart-ment of Corrections is the "preservation and enhancement of the human dignity" of the inmates, and that this goal is furthered by not assigning officers, absent an emergency situation, to where a "substantial portion of the duties include observation or search of unclothed persons of the opposite sex." Administrative Manual of the Department of Corrections, chapter 2000, Article 1, § 2001(c)(7).

Furthermore, federal courts have recognized the existence of an inmate's right to privacy in his own person. *Forts v. Ward*, 621 F.2d 1210 (2d Cir. 1980); *Hudson v. Goodlander*, 494 F.Supp. 890 (D.Md.1980); *Mieth v. Dothard*, 418 F.Supp. 1169, 1185 (M.D.Ala.1976), *aff'd in part and rev'd in part on other grounds sub nom. Dothard v. Rawlinson*, 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977); *Reynolds v. Wise*, 375 F.Supp. 145, 151 (N.D.Tex.1974).

In *Forts, supra*, 621 F.2d 1210, the Second Circuit considered a constitutional challenge identical to the one here except that it involved female inmates and male officers. The court held that the inmates had a privacy interest which protected them from the unrestricted viewing of their unclothed bodies by the male officers. *Id.*, at 1216–17. The court went on to hold that the inmates' privacy interests could be protected without reassigning the male officers. For example, the court approved proposals to permit the inmates to cover their cell windows for brief periods of time to attend to personal needs and to provide the inmates with sleepwear which would adequately cover them during sleep. *Ibid.*, and at n.10. The court also approved the installation into the shower areas of translucent screens which would permit only enough visibility to ascertain that the shower area was occupied. *Id.*, at 1216.

Defendants do not argue, and indeed they could not convincingly argue, that the practice of allowing female officers to view male inmates in the nude furthers the penological interest in rehabilitation. On the contrary, in the normal social setting which prison inmates are ostensibly being rehabilitated to function within, people do not un-

dress, bathe, or defecate in the presence of strangers of the opposite sex. *See Hudson v. Goodlander, supra,* 494 F.Supp. at 893; *Forts v. Ward,* 471 F.Supp. 1095, 1100 n.17 (S.D.N.Y.1978), *vacated in part Forts v. Ward,* 621 F.2d 1210 (2d Cir. 1980); *In re Long,* 127 Cal.Rptr. 732, 737 (Ct.App.), *hrg. granted by California Supreme Court, dismissed as moot,* 55 Cal.App.3d 788 (1976).

Turning now to the security interest of the prison, we have well in mind that an "individual's normal right of privacy must necessarily be abridged upon incarceration in the interest of prison security." *Forts v. Ward, supra,* 621 F.2d at 1213. Nevertheless, inmates do "retain some residual privacy rights" (*Ibid.*), where consistent with prison objectives. Defendants have made only the most general references to a security interest in the prison procedures as they now stand. They have made no showing whatsoever that prison security specifically requires unrestricted opportunities for female officers to inspect male inmates at any and all times. Moreover, it is clear that, absent special circumstances that have not been shown to be present here (e. g., emergency conditions), such a security interest does not exist in light of practices used in other prisons housing inmates convicted of serious felonies which protect the inmates' legitimate privacy concerns. *See, e. g., Forts v. Ward, supra,* 471 F.Supp. at 1097 and 1099 (inmates allowed to cover cell door windows for up to 15-minute intervals while dressing or attending to personal needs).

█ In summary, this court will follow the trend in other courts (*Forts v. Ward, supra,* 621 F.2d 1210; *Hudson v. Goodlander, supra,* 494 F.Supp. 890; *Mieth v. Dothard, supra,* 418 F.Supp. 1169; *Reynolds v. Wise, supra,* 375 F.Supp. 145) toward recognizing that prison inmates have a limited right to privacy which includes a right to be free from the unrestricted observation of their genitals and bodily functions by prison officials of the opposite sex under normal prison conditions. As that right of plaintiff's is being violated under current prison procedures, relief is called for unless it be shown that any reasonably foreseeable re-

lief would adversely affect necessary security routines.

Plaintiff has requested a preliminary injunction enjoining defendants from assigning officers of the opposite sex to those areas of the prison where the officers may view inmates in various stages of undress and while defecating. Defendants argue that such relief would involve improper discrimination against the officers on the basis of their sex, denying them of their constitutional right to equal employment free of sex discrimination. *See Forts v. Ward, supra,* 621 F.2d at 1215–17. Fortunately, a resolution of that issue is not required here; the court believes that plaintiff's privacy interests can be reasonably preserved in some way without infringing unnecessarily on the officers' right to equal employment. While plaintiff's request for a preliminary injunction seeking to reassign the female officers will be denied, other appropriate relief can be granted.

Recognizing, however, that federal courts are "singularly ill-suited to administer the minutiae of the daily affairs of prisons" (*Wolfish v. Levi,* 573 F.2d 118, 120 (2d Cir. 1978), *rev'd on other grounds sub nom. Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)), particularly where state prisons are involved (*Procunier v. Martinez,* 416 U.S. 396, 404–05, 94 S.Ct. 1800, 1807, 40 L.Ed.2d 224 (1974)), the court leaves the task of fashioning and suggesting appropriate relief in the first instance to the expertise of the California correctional authorities. Consideration should be given to the various procedures for protecting inmate privacy discussed in both the district and appellate court opinions published in *Forts v. Ward* (*Forts v. Ward,* 434 F.Supp. 946 (S.D.N.Y.), *rev'd and remanded,* 566 F.2d 849 (2d Cir. 1977), *on remand,* 471 F.Supp. 1095 (1978), *vacated in part,* 621 F.2d 1210 (1980)).

Defendants are instructed to submit a proposed procedure to this court, a copy to be served on plaintiff, within forty (40) days of the filing date of this order regarding a proposed procedure, that will afford plaintiff the minimal privacy to which the

court concludes he is entitled while maximizing the equal job opportunities of the female officers. Plaintiff to have twenty (20) days within which to respond to defendants' proposals.

This court will retain jurisdiction in this matter until the record has been so supplemented.