DENNIS LIEDER, District Attorney Burnett County
You ask whether sec. 53.41, Stats., which requires that at least one jailer on duty be of the same sex as the prisoners in any jail, is in conflict with state and federal laws prohibiting sex discrimination in employment.
It is my opinion that sec. 53.41, Stats., does not conflict with the prohibition against sex discrimination contained in the Wisconsin Fair Employment Act, secs. 111.31-111.37, Stats., because the statutes *Page 203 
were amended simultaneously and the specific requirement of sec. 53.41, Stats., must be given effect over the Act's general prohibition against sex discrimination. To the extent that compliance with sec. 53.41, Stats., as applied to your particular fact situation, may conflict with Title VII of the 1964 Civil Rights Act, 42 U.S.C. sec. 2000e-2, the Supremacy Clause of the United States Constitution requires that federal law prevail over enforcement of the state statute.
Your particular inquiry concerns the positions of dispatcher/jailer at the Burnett County jail, which currently are filled by two females. During the hours of 5:00 p.m. to 8:00 a.m., a single dispatcher/jailer is the only employe on duty at the jail on most work days. The prisoner population in your jail, which has a maximum capacity of nine persons, is entirely male. Female prisoners are incarcerated in facilities located in other counties.
The dispatcher/jailer spends the majority of work time handling radio dispatching duties, including incoming and outgoing transmittals and phone calls, and maintaining a log of such activities. This employe is also responsible for regular (hourly or more often) visual cell checks. Cell checks are necessary to make sure that those incarcerated are present and are receiving medical or other forms of assistance. All booking procedures and the checking of prisoners into the cells are performed by the arresting officer. The dispatcher/jailers are not required to perform strip or pat-down searches of male prisoners, nor to accompany or observe prisoners during toileting or bathing.
Section 53.41, Stats., provides: "Whenever there is a prisoner in any jail there shall be at least one person of the same sex on duty who is wholly responsible to the sheriff or keeper for the custody, cleanliness, food, and care of such prisoner."
In a situation where the jail population is entirely of one sex, or the situation where portions of a jail are segregated by sex, sec. 53.41, Stats., would clearly require that at least one employe on duty be of the same sex as those incarcerated. Applied to the facts outlined above, sec. 53.41, Stats., would require that if only one person is on duty as a dispatcher/jailer, that employe must be a male. *Page 204 
Your question requires an analysis of whether the sex-based employment requirement of sec. 53.41, Stats., is inconsistent with the provisions of state and federal statutes forbidding employment discrimination on the basis of sex. The state and federal statutes forbid discrimination except where sex is a bona fide occupational qualification ("bfoq") for the particular position. Secs. 111.32 (5)(a), (g) and 111.325, Stats.; sec. 703 (a) and (e) of Title VII as amended, 42 U.S.C. sec. 2000e-2 (a) and (e). Under the Wisconsin Fair Employment Act, the "bfoq" exception requires that all of the members of one sex be "physically incapable of performing the essential duties" or that "the essence of the employer's business operation" be undermined if employes are not hired exclusively from one sex. Sec. 111.32
(5)(g)5., Stats. Under Title VII, the exception is limited to those instances "where . . . sex . . . is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise,"42 U.S.C. sec. 2000e-2 (c).
In considering whether sec. 53.41, Stats., conflicts with the requirements of the Wisconsin Fair Employment Act, particularly sec. 111.32 (5)(g), Stats., one must apply the principle that statutes relating to the same subject matter must be construed, if at all possible, in harmony with one another. Hansen StorageCo. v. Wis. Transportation Comm., 96 Wis.2d 249, 255-56,275 N.W.2d 360 (1980). A statutory subsection may not be considered in a vacuum but must be considered in reference to statutes dealing with the same subject matter. Aero Auto Parts, Inc. v.Dept. of Transportation, 78 Wis.2d 235, 239, 253 N.W.2d 896
(1977). When a general and a specific statute relate to the same subject matter, the specific statute controls, Sigma Tau GammaFraternity House v. Menomonie, 93 Wis.2d 392, 402, 288 N.W.2d 85
(1980).
Both secs. 53.41 and 111.32 (5)(g), Stats., relate to the employer's ability to hire and otherwise deal with applicants and employes on the basis of their sex. Section 53.41, Stats., is the more specific of the two statutes, dealing with the limited context of custody of prisoners in county jails. Both secs. 53.41 and 111.32 were revised and amended essentially in their present form by the same session law, ch. 94, Laws of 1975. Prior to the amendment, sec. 53.41, Stats., had required only that there be a "matron" on duty whenever a female prisoner was incarcerated. Chapter 94, Laws of *Page 205 
1975, was intended to eliminate from many portions of the statutes distinctions between persons on the basis of their sex. "Summary and analysis of ch. 94, Laws of 1975," Wis. Leg. Council Memo 75-7, Legislative Reference Bill Folder for ch. 94, Laws of 1975.
Accordingly, it is my opinion with respect to Wisconsin law, that sec. 53.41, Stats., does not conflict with sec. 111.32
(5)(g), Stats. I note, for example, that sec. 53.41, Stats., does not require that all jailers assigned be the same sex as those under their custody. Particularly in a larger jail or one having some degree of staffing flexibility, it may be possible to comply with the express requirements of both secs. 53.41 and 111.32
(5)(g), Stats. To the extent there may be an apparent conflict under the facts of a particular case, however, the specific requirement of sec. 53.41, Stats., would control. Sigma Tau GammaFraternity House, 93 Wis.2d at 402.
A more serious, and less easily resolved, problem arises in implementing sec. 53.41, Stats., in light of the prohibition against sex discrimination under Title VII. Under the Supremacy Clause of the United States Constitution, state laws that conflict with Title VII are preempted. Warshafsky v. Journal Co.,63 Wis.2d 130, 142, 216 N.W.2d 197 (1974); Kober v. WestinghouseElectric Co., 325 F. Supp. 467, 474 (W.D. Pa. 1971); see alsoDothard v. Rawlinson, 433 U.S. 321, 331 n. 14 (1977).
Thus, the question which must be answered in each case in which sec. 53.41, Stats., applies, is whether the hiring and assignment of jailers on the basis of sex would come within the "bfoq" exception under Title VII, 42 U.S.C. sec. 2000e-(2)(e). Because problems in the application of sec. 53.41, Stats., will differ depending on the organization of the individual jail and the duties of the particular job, I will discuss the development of the case law in this area generally before addressing the facts you have outlined as existing in the Burnett County Jail in particular.
Federal courts interpreting Title VII have uniformly regarded the "bfoq" provision as an extremely narrow exception to the prohibition against sex discrimination. Dothard, 433 U.S. at 333-34. As a statutory defense, the burden of proof is on the employer to establish that the "bfoq" is "reasonably necessary to the normal operation" of the *Page 206 
institution, 42 U.S.C. sec. 2000e-2 (c)(1). Gunther v. Iowa StateMen's Reformatory, 612 F.2d 1079, 1086 (8th Cir.); cert. denied,100 S.Ct. 2942 (1980).
Formulations of the employer's evidentiary burden vary. Generally, however, in order to establish a "bfoq" defense, an employer must have a reasonable factual basis to believe and must demonstrate that all or substantially all the members of one sex would be unable to perform safely and efficiently the duties of the particular job, Weeks v. Southern Bell Tel. Tel. Co.,408 F.2d 228, 235 (5th Cir., 1969); or that the essence of the business operation would be undermined by not hiring members of one sex exclusively. Diaz v. Pan American World Airways, 442 F.2d 385,388 (5th Cir., 1971), cited in Dothard, 433 U.S. at 333 andGunther, 612 F.2d at 1085. The employer must establish administrative necessity and not merely administrative inconvenience to support a sex-based "bfoq." Diaz,442 F.2d at 388. The Seventh Circuit has held, furthermore, that physical or sexual characteristics alone, rather than attributes which are culturally more common to one sex than the other, must form the basis for the "bfoq." In re Consolidated Pretrial Proceedings,582 F.2d 1142, 1146 (7th Cir., 1978).
In the prison or jail setting in recent years, inmates' rights to bodily privacy, particularly in regard to body searches or surveillance by members of the opposite sex, have been asserted to be in conflict with the equal employment opportunities of jailers and correctional officers. It is, in fact, unclear to what degree incarcerated persons, whether pretrial detainees or convicted persons, retain a constitutional right to bodily privacy, as protection against opposite sex searches or surveillance. See generally: Bell v. Wolfish, 441 U.S. 520
(1979); Forts v. Ward, 621 F.2d 1210 (2d Cir., 1980); Sterling v.Cupp, 44 Ore. App. 755, 607 P.2d 206 (1980), (dissenting opinions); cf. Fesel v. Masonic Home of Delaware, Inc.,447 F. Supp. 1346 (D. Del., 1978).
Nevertheless, the reported decisions addressing both asserted inmates' privacy rights and statutorily guaranteed employment rights of correctional officers and jailers have almost without exception recognized a need to accommodate the two interests.Gunther; Forts; Manley v. Mobile County, 441 F. Supp. 1351 (S.D. Ala., *Page 207 
1977); Reynolds v. Wise, 375 F. Supp. 145 (N.D. Tex., 1974);Sterling; Carey v. N.Y. State Human Rights Appeal Bd.,61 App. Div. 2d 804, 402 N.Y.S.2d 207 (N.Y.App.Div., 1978); see also, Note, "Balancing Inmates' Rights to Privacy With Equal Employment for Prison Guards," 4 Women's Rts. L. Rep. 243 (1978). The foregoing cases, which either recognize a limited right of inmates to bodily privacy or assume one for purposes of resolving the case at hand, also recognize that inmates cannot expect total insulation from surveillance by the opposite sex. Certain activities, however, have been proscribed as an invasion of privacy when performed by members of the opposite sex. Such activities include direct observation during toilet and bathing activities and visual inspection or physical search of or contact with the anal-genital areas, (including both searches and patdown frisks through clothing). Forts v. Ward, 471 F. Supp. 1095 (S.D. N.Y., 1979), rev'd in part on other grounds, 621 F.2d 1210 (2d Cir., 1980); Reynolds v. Wise, 375 F. Supp. at 151; Sterling.
Despite uncertainty regarding the scope of inmates' privacy rights, most courts analyzing the question have been notably reluctant to hold that sex is a "bfoq" for corrections' personnel. Gunther, 612 F.2d at 1079; Forts, 621 F.2d at 1213;Reynolds, 375 F. Supp. at 145; Manley, 441 F. Supp. at 1351;Carey; but see Dothard, 433 U.S. at 321. The difficulty of recognizing a "bfoq" for correctional officers or jailers is illustrated by the Dothard opinion itself. The Supreme Court recognized a sex-based "bfoq" in Dothard for "contact" positions in the Alabama male maximum security prison. The Court's decision emphasized the uniquely degrading conditions in the Alabama prisons, and subsequent cases have limited that decision to its facts. Instead, in cases like Manley and Gunther, the courts dealing with "bfoq" questions in the prison or jail setting have developed a variant of the evidentiary burden for establishing a "bfoq" by requiring an examination of alternative job assignments. In order to establish sex as a "bfoq" under these cases, the employer must show that the hiring of one sex would undermine the essence of prison administration, and that job responsibilities cannot reasonably be arranged in such a way as to minimize or eliminate any possible conflict between the privacy interests of inmates and the nondiscrimination principles of Title VII. Gunther, 612 F.2d at 1086; Forts, 621 F.2d at 1216;Reynolds, 375 F. Supp. at 145. *Page 208 
Questions regarding "bfoq's" in the jail or prison setting and issues of inmates' rights of bodily privacy are sensitive and difficult ones. Forts, 621 F.2d at 1211-12; cf. Doe v. Duter,407 F. Supp. 922 (W.D. Wis., 1976). Authoritative judicial or legislative guidance on the balance which must be struck is not yet available, and each case must be analyzed in light of its individual facts. Nonetheless, I hope that the foregoing discussion will assist county sheriffs and corporation counsel in determining whether compliance with see. 53.41, Stats., is likely to expose the county to a claim of sex discrimination under Title VII, if not under the Wisconsin Fair Employment Act as well.
In many counties, conflict between sec. 53.41, Stats., and the Title VII rights of employes may be avoidable because of staffing flexibility and by the use of alternative work assignments. In such cases, compliance with both state and federal statutes is required. In those instances in which the individual facts establish that sex is not a "bfoq" under Title VII, the requirements of sec. 53.41, Stats., are superseded, based on the Supremacy Clause. Where being male or female does constitute a "bfoq" for a particular jailer position, compliance with sec. 53.41, Stats., would follow.
Based on the facts outlined above regarding the dispatcher/jailers in Burnett County, I believe a court would conclude that being male or female is not a bona fide occupational qualification for those positions. In the circumstances you have outlined, it is my opinion that the county's obligation to comply with sec. 53.41, Stats., could not justify avoidance of the requirements of Title VII, and the federal statute would supersede the state statute. Accordingly, it would be impermissible to terminate the incumbent female dispatcher/jailers or to hire an additional male dispatcher/jailer solely upon the basis of sex.
BCL:MAM *Page 209