**Jane DOE, Individually and on behalf of others similarly situated, Plaintiff,**

v.

**Rex DUTER et al., Defendants.**

**No. 76–C–65.**

United States District Court, W. D. Wisconsin.

Feb. 19, 1976.

Elizabeth Alexander, Corrections Legal Services Program, Madison, Wis., for plaintiff.

Gary L. Carlson, Asst. Atty. Gen., Bronson La Follette, Atty. Gen., State of Wisconsin, Madison, Wis., for defendants.

OPINION AND ORDER

JAMES E. DOYLE, District Judge.

This opinion and order are directed to plaintiff's motion for a preliminary injunction with respect to participation by male staff members in bodily searches of females confined in the Wisconsin School for Girls, Oregon, Wisconsin. For the purpose of deciding this motion for a preliminary injunction, and only for this purpose, I find as fact those matters set forth below under the heading "Facts."

## Facts

There are confined at the School females aged 12 through 17 who have been adjudged delinquent, as well as young males. The staff refers to those confined as "students" and I will use that term herein. The staff which supervises the female students includes males and females. When a staff determination is made that a bodily search of a female student is necessary, the search is conducted by a female staff member, except in circumstances to be described in a moment. A bodily search may consist of a pat-down of the female student while she remains clothed; this may involve the use of the staff member's hands to explore the student's clothing, including pockets, and to explore the surface of the student's body within her clothing. A bodily search may also include the removal of the female student's clothing. No searches of the cavities of the bodies of female students are conducted at the school. When a search is to be conducted, the female student is so informed and is given the opportunity to cooperate, including the opportunity to remove her clothing, when removal of clothing is required. If the female student refuses to cooperate in the conduct of the search, and if the female staff member is physically unable to conduct the search over the student's resistance, the female staff member seeks and obtains the assistance of as many other staff members as are reasonably necessary to permit the search to be conducted over the student's resistance. Whether these additional staff members are females or males depends upon which staff members are readily available at the time and place, and not infrequently they are male security guards. There are presently no female security guards at the school. When resistance is encountered initially by the female staff member, she proceeds to enlist assistance and to conduct the search as soon as the assistance can reasonably be obtained. That is, there is no conscious effort to determine whether it is necessary to proceed promptly with the search and, if not, to await a time at which there may be available enough female staff members to permit the search to be conducted exclusively by female staff members. When a bodily search of a female student is conducted forcibly over the student's resistance and when one or more staff members participate in the search, the male staff members' participation is limited to restraining the student's movements, and it is a female staff member who uses her hands to explore the student's clothing and the surface of her body.

## Opinion

The preliminary injunction sought would prohibit the participation of male staff members in the bodily search of a female student "unless there is an immediate threat to life or health involved and no other staff are available to perform the search."[1]

I take judicial notice that although there will be many individual differences among people in the degree of their emotional and psychological reactions to the experience, a forcible search of one's clothing and of the surfaces of one's body by another person is offensive and humiliating, whether one is male or female and whether the person or persons conducting the search are male or female. Although there is no empirical evidence on the point in this record, I am also prepared to take judicial notice, for the purpose of this motion for preliminary injunction, that in the State of Wisconsin in 1976 it is a significantly more offensive and humiliating experience for females of the ages of 12 through 17, as a class, to be subjected to forcible bodily

---

1. The plaintiffs' class as provisionally certified includes all students, male and female, confined to the School, and the motion for preliminary injunction refers to participation by "staff members of the opposite sex" in searches of "class member[s]," but in the course of the hearing, I understood plaintiff's counsel to limit the motion to participation by male staff members in bodily searches of female students.

searches in which males participate by restraining physical movement, than to be subjected to forcible bodily searches in which males participate in no way.

Because of this significant difference in the degree of offensiveness and humiliation involved, for the present it may be that as a matter of policy those who administer the School, those responsible for appropriations of money for it, and those responsible for recruitment, training, and assignment of personnel within the correctional system, should cooperate to adopt and carry out a program which is consistent with the terms of the preliminary injunction sought by this plaintiff.

The question for me to decide, however, is whether the due process clause of the Fourteenth Amendment to the Constitution of the United States compels the state to adopt and carry out such a program.

More specifically, plaintiff's contention is that the Fourth Amendment, as embodied in the due process clause of the Fourteenth, affords her and other female students at the School the right "to be secure in their persons   .   .   . against unreasonable searches.   .   . " The present motion embodies no contention that the searches at the School are unreasonable, except to the extent that males participate in searches of female students when emergent circumstances do not compel that the searches be conducted at times when an all-female search team cannot be assembled. Put differently, if the facts were that all bodily searches of female students at the School were conducted exclusively by female staff members, the present motion would not reach to any other possible constitutional defects in the searches.

■ Plaintiff contends, correctly, that values which are often referred to as "privacy" enjoy the protection of the Fourth Amendment. That is, an otherwise reasonable search of one's body may be rendered unreasonable if the circumstances in which it occurs or the manner in which it is conducted invade too rudely the privacy of the person searched. In the case at hand, there is already present a rude invasion of privacy, whether the forcible searches are conducted by males or females. Therefore, the contention must be, and is, that there is a specific kind of privacy which is too rudely invaded when males, rather than females, restrain the movements of female students while their bodies are searched by females.

We deal here with the quicksilver of the emotional and psychological responses of human beings. Rationally, it is of no significance whether the movement of the arms or legs or head of a young female is forcibly restrained by a male or a female, while a female searches her clothing or the surface of her body. But I have taken judicial notice that young females, generally, perceive and sense a significant difference. Whether this phenomenon is biological, anthropological, or cultural, whether it is transient or permanent in human experience, I am totally unqualified to say, nor does the present record in this case contain anything to enlighten me. But suffering from these limitations of the record in its present state, I am unwilling to assume that the phenomenon is sufficiently permanent to compel that acceptance of it be cemented within the Constitution.

■ Typically, the question whether a body search is constitutionally reasonable arises in the context of a motion to suppress evidence in a criminal case in which a particular search of the body of a particular person has already occurred at a particular time and place under a particular set of circumstances. In such a case, the court may take into account every known aspect of an historical event, including, perhaps, the sex of the searchers and the sex of the person searched, and the emotional response actually experienced by the particular person searched. The consequence of a suppression order, if granted, is that certain information which may or may not be of critical importance, is withheld from the factfinder in that case. But with respect to the permanent injunctive relief

sought in this case (and thus, in terms of evaluating the probable ultimate outcome of this lawsuit, the preliminary injunctive relief as well), the court is called upon to hold, as a constitutional rule of general application, that males may not participate in bodily searches of young females, absent a sufficiently compelling emergency. The consequence is directly to control the operations of the School for an indefinite period of time whenever the problem arises.

I take judicial notice that within the field of corrections, there is a respectable body of opinion that both the inmate populations and the staffs of institutions of confinement should include both males and females, so that the social setting does not depart so radically from the noninstitutional social setting. Also, I take judicial notice that in the field of law enforcement, and specifically police work, there is a respectable body of opinion that the historical imbalance should be corrected and that many more females should participate in this function. Of course, I am aware that as such changes occur, if they do, there will remain many questions whether certain specific duties should be assigned without regard to the sex of the correctional officer or law enforcement officer, or the sex of the inmate or suspect affected. But it seems unwise possibly to deter or even to prevent these developments generally by the adoption of the constitutional rule sought by the plaintiff in this case, with its relative permanence and with its many implications.

I conclude that plaintiff's chance ultimately to prevail in her contention in this lawsuit is not sufficiently good to support preliminary injunctive relief.

It is ordered that the plaintiff's motion for a preliminary injunction is denied.