Celio **DIAZ, Jr.**, Plaintiff-Appellant,

v.

**PAN AMERICAN WORLD AIRWAYS,
INC.**, Defendant-Appellee.

No. 30098.

United States Court of Appeals,
Fifth Circuit.

April 6, 1971.

Rehearing Denied and Rehearing En
Banc Denied May 10, 1971.

Eleanor L. Schockett, Miami, Fla., for plaintiff-appellant.

Stephen H. Kimatian, O'Donnell & Schwartz, New York City, for Transport Workers Union of America, AFL–CIO, amicus curiae.

Stanley P. Hebert, Gen. Counsel, Russell Specter, Deputy Gen. Counsel, Gladys Maxine Bethel, David Cashdan, Attys., Washington, D. C., E. E. O. C., amicus curiae.

Herbert Prashker, Poletti, Freidin, Prashker, Feldman & Gartner, New York City, James L. Armstrong, III, Smathers & Thompson, Miami, Fla., and Robert H. Burns, Miami Beach, Fla., for defendant-appellee; Murray Gartner, Lawrence A. Katz, New York City, James L. Armstrong, Miami, Fla., of counsel.

Gilbert Feldman, Barbara J. Hillman, Chicago, Ill., for Air Line Stewards and Stewardesses Assn., amicus curiae.

Before TUTTLE, AINSWORTH and SIMPSON, Circuit Judges.

TUTTLE, Circuit Judge:

This appeal presents the important question of whether Pan American Airlines' refusal to hire appellant and his

class of males solely on the basis of their sex violates § 703(a) (1) of Title VII of the 1964 Civil Rights Act. Because we feel that being a female is not a "bona fide occupational qualification" for the job of flight cabin attendant, appellee's refusal to hire appellant's class solely because of their sex, does constitute a violation of the Act.

The facts in this case are not in dispute. Celio Diaz applied for a job as flight cabin attendant with Pan American Airlines in 1967. He was rejected because Pan Am had a policy of restricting its hiring for that position to females. He then filed charges with the Equal Employment Opportunity Commission (EEOC) alleging that Pan Am had unlawfully discriminated against him on the grounds of sex. The Commission found probable cause to believe his charge, but was unable to resolve the matter through conciliation with Pan Am. Diaz next filed a class action in the United States District Court for the Southern District of Florida on behalf of himself and others similarly situated, alleging that Pan Am had violated Section 703 of the 1964 Civil Rights Act by refusing to employ him on the basis of his sex; he sought an injunction and damages.

Pan Am admitted that it had a policy of restricting its hiring for the cabin attendant position to females. Thus, both parties stipulated that the primary issue for the District Court was whether, for the job of flight cabin attendant, being a female is a "bona fide occupational qualification (hereafter BFOQ) reasonably necessary to the normal operation" of Pan American's business.

The trial court found that being a female was a BFOQ, D.C., 311 F.Supp. 559. Before discussing its findings in detail, however, it is necessary to set forth the framework within which we view this case.

Section 703(a) of the 1964 Civil Rights Act provides, in part:

(a) It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin * * *.

The scope of this section is qualified by § 703(e) which states:

(e) Notwithstanding any other provision of this subchapter,

(1) it shall not be an unlawful employment practice for an employer to hire and employ employees * * * on the basis of his religion, sex, or national origin in those certain instances where religion, sex, or national origin is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise * * *.

Since it has been admitted that appellee has discriminated on the basis of sex, the result in this case, turns, in effect, on the construction given to this exception.

■ We note, at the outset, that there is little legislative history to guide our interpretation. The amendment adding the word "sex" to "race, color, religion and national origin" was adopted one day before House passage of the Civil Rights Act. It was added on the floor and engendered little relevant debate. In attempting to read Congress' intent in these circumstances, however, it is reasonable to assume, from a reading of the statute itself, that one of Congress' main goals was to provide equal access to the job market for both men and women. Indeed, as this court in Weeks v. Southern Bell Telephone and Telegraph Co., 5 Cir., 408 F.2d 228 at 235 clearly stated, the purpose of the Act was to provide a foundation in the law for the principle of nondiscrimination. Construing the statute as embodying such a principle is based on the assumption that Congress sought a formula that would not only achieve the optimum use of our labor re-

sources but, and more importantly, would enable individuals to develop as individuals.

■ Attainment of this goal, however, is, as stated above, limited by the bona fide occupational qualification exception in section 703(e). In construing this provision, we feel, as did the court in *Weeks, supra,* that it would be totally anomalous to do so in a manner that would, in effect, permit the exception to swallow the rule. Thus, we adopt the EEOC guidelines which state that "the Commission believes that the bona fide occupational qualification as to sex should be interpreted narrowly." 29 CFR 1604.1(a) Indeed, close scrutiny of the language of this exception compels this result. As one commentator has noted:

"The sentence contains several restrictive adjectives and phrases: it applies only *'in those certain instances'* where there are *'bona fide'* qualifications *'reasonably necessary'* to the operation of that *'particular'* enterprise. The care with which Congress has chosen the words to emphasize the function and to limit the scope of the exception indicates that it had no intention of opening the kind of enormous gap in the law which would exist if [for example] an employer could legitimately discriminate against a group solely because his employees, customers, or clients discriminated against that group. Absent much more explicit language, such a broad exception should not be assumed for it would largely emasculate the act." (emphasis added) 65 Mich.L.Rev. (1966).

Thus, it is with this orientation that we now examine the trial court's decision. Its conclusion was based upon (1) its view of Pan Am's history of the use of flight attendants; (2) passenger preference; (3) basic psychological reasons for the preference; and (4) the actualities of the hiring process.

Having reviewed the evidence submitted by Pan American regarding its own experience with both female and male cabin attendants it had hired over the years, the trial court found that Pan Am's current hiring policy was the result of a pragmatic process, "representing a judgment made upon adequate evidence acquired through Pan Am's considerable experience, and designed to yield under Pan Am's current operating conditions better *average* performance for its passengers than would a policy of mixed male and female hiring." (emphasis added) The performance of female attendants was *better* in the sense that they were *superior* in such non-mechanical aspects of the job as "providing reassurance to anxious passengers, giving courteous personalized service and, in general, making flights as pleasurable as possible within the limitations imposed by aircraft operations."

The trial court also found that Pan Am's passengers overwhelmingly preferred to be served by female stewardesses. Moreover, on the basis of the expert testimony of a psychiatrist, the court found that an airplane cabin represents a unique environment in which an air carrier is required to take account of the special psychological needs of its passengers. These psychological needs are better attended to by females. This is not to say that there are no males who would not have the necessary qualities to perform these non-mechanical functions, but the trial court found that the actualities of the hiring process would make it more difficult to find these few males. Indeed, "the admission of men to the hiring process, in the present state of the art of employment selection, would have increased the number of unsatisfactory employees hired, and reduced the average levels of performance of Pan Am's complement of flight attendants. * * * " In what appears to be a summation of the difficulties which the trial court found would follow from admitting males to this job the court said "that to eliminate the female sex qualification would simply eliminate the *best* available tool for screening out applicants *likely* to be unsatisfactory and thus reduce the

*average* level of performance." (emphasis added)

Because of the narrow reading we give to section 703(e), we do not feel that these findings justify the discrimination practiced by Pan Am.

■ We begin with the proposition that the use of the word "necessary" in section 703(e) requires that we apply a business *necessity* test, not a business *convenience* test. That is to say, discrimination based on sex is valid only when the *essence* of the business operation would be undermined by not hiring members of one sex exclusively.

The primary function of an airline is to transport passengers safely from one point to another. While a pleasant environment, enhanced by the obvious cosmetic effect that female stewardesses provide as well as, according to the finding of the trial court, their apparent ability to perform the non-mechanical functions of the job in a more effective manner than most men, may all be important, they are tangential to the essence of the business involved. No one has suggested that having male stewards will so seriously affect the operation of an airline as to jeopardize or even minimize its ability to provide safe transportation from one place to another. Indeed the record discloses that many airlines including Pan Am have utilized both men and women flight cabin attendants in the past and Pan Am, even at the time of this suit, has 283 male stewards employed on some of its foreign flights.

■ We do not mean to imply, of course, that Pan Am cannot take into consideration the ability of *individuals* to perform the non-mechanical functions of the job. What we hold is that because the non-mechanical aspects of the job of flight cabin attendant .are not "reasonably necessary to the normal operation" of Pan Am's business, Pan Am cannot exclude *all* males simply because *most* males may not perform adequately.

Appellees argue, however, that in so doing they have complied with the rule in *Weeks*. In that case, the court stated:

> We conclude that the principle of non-discrimination requires that we hold that in order to rely on the bona fide occupational qualification exception an employer has the burden of proving that he had reasonable cause to believe, that is, a factual basis for believing, that all or substantially all women would be unable to perform safely and efficiently the duties of the job involved. Id. 408 F.2d at 235

We do not agree that in this case "all or substantially all men" have been shown to be inadequate and, in any event, in *Weeks*, the job that most women supposedly could not do was necessary to the normal operation of the business. Indeed, the inability of switchman to perform his or her job could cause the telephone system to break down. This is of an entirely different magnitude than a male steward who is perhaps not as soothing on a flight as a female stewardess.

Appellees also argue, and the trial court found, that because of the actualities of the hiring process, "the *best* available initial test for determining whether a particular applicant for employment is likely to have the personality characteristics conducive to high-level performance of the flight attendant's job as currently defined is consequently the applicant's biological sex." Indeed, the trial court found that it was simply not practicable to find the few males that would perform properly.

We do not feel that this alone justifies discriminating against all males. Since, as stated above, the basis of exclusion is the ability to perform non-mechanical functions which we find to be tangential to what is "reasonably *necessary*" for the business involved, the exclusion of *all* males because this is the *best* way to select the kind of personnel Pan Am desires simply cannot be justified. Before sex discrimination can be practiced, it must not only be shown that it is im-

practicable to find the men that possess the abilities that most women possess, but that the abilities are *necessary* to the business, not merely tangential.

Similarly, we do not feel that the fact that Pan Am's passengers prefer female stewardesses should alter our judgment. On this subject, EEOC guidelines state that a BFOQ ought not be based on "the refusal to hire an individual because of the preferences of co-workers, the employer, clients or customers. * * *" 29 CFR § 1604.1(iii).

As the Supreme Court stated in Griggs v. Duke Power Co., 400 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), "the administration interpretation of the Act by the enforcing agency is entitled to great deference. See also, United States v. City of Chicago, 400 U.S. 8, 91 S.Ct. 18, 27 L.Ed.2d 9 (1970); Udall v. Tallman, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); Power Reactor Development Co. v. Electricians, 367 U.S. 396, 81 S.Ct. 1529, 6 L.Ed.2d 924 (1961). While we recognize that the public's expectation of finding one sex in a particular role may cause some initial difficulty, it would be totally anomalous if we were to allow the preferences and prejudices of the customers to determine whether the sex discrimination was valid. Indeed, it was, to a large extent, these very prejudices the Act was meant to overcome. Thus, we feel that customer preference may be taken into account only when it is based on the company's inability to perform the primary function or service it offers.

Of course, Pan Am argues that the customers' preferences are not based on "stereotyped thinking," but the ability of women stewardesses to better provide the non-mechanical aspects of the job. Again, as stated above, since these aspects are tangential to the business, the fact that customers prefer them cannot justify sex discrimination.

The judgment is reversed and the case is remanded for proceedings not inconsistent with this opinion.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.