Bertram Harnett, J.
" Frailty, thy name is woman! ’ ’ sayeth William Shakespeare in the sixteenth century (Hamlet, Act I, Scene ii). Not so, say five Nassau County policewomen who demand the opportunity to become police sergeants. Therein lies a modern tale of exclusion from employment classification.
The five policewomen each seek appointment to the position of police sergeant, and have applied to take the appropriate civil service examination.
Under the policies and rules of the County Civil Service Commission and Police Department, the women were found ineligible to take the police sergeant examination, since only those serving as patrolmen qualify for promotion to police sergeant. However, the women were informed they could take an examination for the position of “policewoman sergeant ”. Apparently, vacancies are available for two policewoman sergeants, and an undisclosed number of police sergeants.
The women claim that, in being barred from the police sergeant’s examination, they are in reality being discriminated against on the basis of sex and seek in this class proceeding to enjoin the giving of the separate police sergeant and policewoman sergeant examinations on April 29, 1972. The county officials essentially defend that the job classifications are reasonably drawn with respect to required experience and ability to perform.
*936 The opportunity to obtain employment without discrimination because of sex is a civil right. (Executive Law, § 291.) When a particular sex is a “ bona fide occupational qualification ”, as for instance a female dramatic role, employment lines can be drawn to include that sex alone. (Executive Law, § 296, subd. 1, par. [d]); see Civil Service Law, § 50, subd. 7; U. S. Code, tit. 42, § 2000e-2, subd. [e].) Otherwise, it is unlawful to refuse to hire or employ any individual purely because of sex. (Executive Law, § 296; Civil Rights Act of 1964, tit. VII [78 IT. S. Stat. 253].)
The Police Department is not legally shielded from the requirement of providing equal employment opportunity to, and recognizing the civil rights of, its members. (See Mize v. State Division of Human Rights, 38 A D 2d 278.)
The question here is whether the requirement of being a police patrolman is a bona fide occupational qualification for police sergeant. Traditional notions of femininity versus masculinity must be excluded. (Code of Fed. Reg., tit. 29, § 1604.1; New York State Division of Human Rights v. New York-Pennsylvania Professional Baseball League, 36 A D 2d 364, affd. 29 N Y 2d 921; Udall v. Tallman, 380 U. S. 1, 16.)
The county people first argue that police sergeants uniquely observe conditions at police posts, inspect departmental vehicles for serviceability and cleanliness and direct criminal investigations. However, since no proof whatever was introduced to show that policewomen cannot perform these functions, these duties alone cannot justify the exclusion of women. (Cf. Weeks v. Southern Bell Tel. & Tel. Co., 408 F. 2d 228 [C. A. 5th, 1969].)
More to the point is the general statement of duties for the police sergeant class which specifies that a police sergeant: 11 supervises the activities of patrolmen on an assigned shift within the command to which he is attached ’ ’. While the women claim that patrolmen and policewomen have identical duties, the specific job descriptions attached as exhibits to the officials’ affidavits show otherwise. Patrolmen are assigned to significant duties which policewomen do not perform, including general police patrol functions such as fights, stickups, armed robberies, homicides, directing traffic, making arrests and preserving the public peace. Patrolmen have experience in performing these duties; policewomen do not. It is reasonable to provide that a sergeant charged with the duty of supervising patrolmen should have experience in the very operation he must supervise. None of the women have this experience, not unremarkably since those duties have been exclusively reserved for men. Apparently, the women have not formally complained *937 about being excluded from performing the duties of patrolmen ; yet, because of the missing job experience, they now lack an essential bona fide job qualification for supervising patrolmen. The court finds therefore that restricting the job of police sergeant to patrolmen does not violate the Executive Law or Civil Service Law and is reasonable under the Fourteenth Amendment to the United States Constitution.
The women rely heavily on Matter of Shpritzer v. Lang (17 A D 2d 285 [1st Dept.], aifd. 13 N Y 2d 744) holding New York City policewomen are entitled to take an otherwise all male police sergeant examination. However, New York City had local legislation conferring all rights and privileges of patrolmen upon policewomen (17 A D 2d, at p. 289), and no such provisions appear in Nassau County. Moreover, the records indicate a significantly broader policing function for New York City policewomen than currently appear for Nassau policewomen. Finally, the women in Shpritser were excluded from any promotion to the rank of sergeant, whereas Nassau policewomen can be promoted with equal pay to policewoman sergeant.
In essence, the court’s finding here is simply that the women cannot succeed in becoming police sergeants unless they first establish themselves experientially as patrolmen. "Whether women are being lawfully precluded as “ patrolmen ” is a different question and a different case than the one presented here. That doubtless awaits a later judicial date.
The idea that women as such cannot be “ patrolmen ” will not be upheld unless supported by actual proof. (Cf. New York Division of Human Rights v. New York-Pennsylvania Professional Baseball League, supra, sustaining a woman as a professional baseball umpire.) Stereotyped characterizations, no matter how ingrained, are meant to be forestalled by the Executive Law and the Civil Rights Act of 1964. (See, Diaz v. Pan Amer. World Airways, 442 F. 2d 385 [C. A. 5th, 1971]; Sprogis v. United Air Lines, 444 F. 2d 1194 [C. A. 7th, 1971].) Matter of Shpritzer v. Lang (supra) suggests that the question of women on patrol duty may be far from academic.
The governing principle of nondiscrimination requires that people be considered on the basis of their individual capabilities and not on the bases of any characteristics generally attributable to the group, or characteristics generally irrelevant to the job. (Cf. Ridinger v. General Motors Corp., 325 F. Supp. 1089, 1096 [S.D.W.D. Ohio 1971].)
In an interesting article, “ The Women in Blue ”, appearing on page 60 of Time Magasine, May 1, 1972, it is reported that in seven cities women are driving squad cars, responding to *938 radio calls, and investigating crimes. Time further reports that about 45 women are now 1 ‘ pounding beats ’ ’ in this country, and that the Washington, D. C., police force is hiring 100 women for “ regular patrol duty ”.
The problem is not an easy one. Subtle psychological resistance to the idea of policewomen performing regular patrol duties crops up even in the very Time article which recites their favorable usage. The Time article goes so far as to suggest that the wider use of policewomen might make police work more effective generally because of a built-in “calming effect” on violence. But after all is said and done, the article concludes with the ‘ ‘ male chauvinistic put down ’ ’ classic to the advocates of the women’s rights: “ Those who are there already have provided a devastating new weapon to the police crime-fighting arsenal, one that has helped women to get their men for centuries. It worked well for diminutive Patrolwoman Ina Sheperd after she collared a muscular shoplifter in Miami last December and discovered that there were no other cops — or even a telephone • — around. Unable to summon help, she burst into tears. ‘If I don’t bring you in, I’ll lose my job,’ she sobbed to her prisoner, who chivalrously accompanied her until a squad car could be found ”.
Accordingly, petitioners ’ application is denied and the petition dismissed.