**William J. SAUNDERS, Plaintiff,**

v.

**HERCULES, INC., Defendant.**

**Civ. A. No. 78–0163–R.**

United States District Court,
W. D. Virginia,
Roanoke Division.

April 10, 1981.

M. Lanier Woodrum, Woodward, Fox & Wooten, Roanoke, Va., for plaintiff.

Edwin C. Stone, Davis & Stone, Timothy S. Kavanaugh, Hercules, Inc., Radford, Va., for defendant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

The plaintiff, William J. Saunders, a former employee of the defendant, Hercules, Inc., at its Radford Army Ammunition Plant, filed this action pursuant to 42 U.S.C. § 2000e et seq., alleging he was discriminatorily fired on account of his sex. Jurisdiction of this court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343. The case was tried on 27 January 1981 before a seven-member advisory jury, who found that the defendant discriminated against the plaintiff because of his sex in terminating him from employment in 1974. The court adopted the verdict of the advisory jury and entered judgment for the plaintiff on 28 January 1981. This case is presently before the court on the defendant's motion for relief from the judgment, pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. For the reasons stated below, the defendant's motion is denied.

### I.

The defendant claims that the recent United States Supreme Court decision in *Texas Department of Community Affairs v. Joyce Ann Burdine*, —— U.S. ——, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), significantly altered the law of burden of proof as applied by the court in the case at bar.[1] In *Burdine*, the United States

---

1. Initially, it is important to clarify whether the plaintiff's claim is more appropriately analyzed under the "disparate treatment" test of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), or under the "disparate impact" test of *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), or under both. *See, e. g., Furnco Construction Corp. v. Waters*, 438 U.S. 567, 575 n. 7, 98 S.Ct. 2943, 2948 n. 7, 57 L.Ed.2d 957 (1978); *Wright v. National Archives & Records Service*, 609 F.2d 702 (4th Cir. 1979) (*en banc*). The United States Supreme Court contrasted the two theories in *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), stating that disparate treatment exists where "[t]he employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin," while disparate impact "involve[s] employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." *Id.* at 335 n. 15, 97 S.Ct. at 1854 n. 15. Neither the plaintiff nor the defendant expressly articulated which theory was being pursued in the case at bar.

This court finds that the plaintiff has not established a prima facie case of disparate impact in this case. *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). There was no evidence at trial of a pattern of discrimination; the petitioner alleges the defendant discriminated against him because of his sex in an apparently isolated incident involving the discharge of several male guards. This action is clearly based on the

Supreme Court reiterated the doctrine set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), where the Court held that the plaintiff has the burden of proving a prima facie case of discrimination by the preponderance of the evidence, and that if the plaintiff establishes a prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. If the defendant carries that burden, the plaintiff must then prove by a preponderance of the evidence that the legitimate reasons offered by the defendant are merely a pretext for discriminatory actions. The Court held in *Burdine* that the United States Court of Appeals for the Fifth Circuit had erred in requiring the defendant "to prove by a preponderance of the evidence the existence of nondiscriminatory reasons for terminating the [employee], and that the person retained in her stead had superior objective qualifications for the position." The Court re-emphasized that once the plaintiff has proved a prima facie case of discrimination, the only burden upon the defendant is that of "explaining clearly the nondiscriminatory reasons for its actions." *Burdine*, at ——, 101 S.Ct. at 1097.

Although the *Burdine* decision had not been announced at the time the plaintiff's case was tried, this court had the benefit of the *McDonnell Douglas* decision as well as an application of that decision by the United States Court of Appeals for the Fourth Circuit in *Ambush v. Montgomery County Government Dept. of Finance Div. of Revenue*, 620 F.2d 1048 (4th Cir. 1980). There, the Fourth Circuit Court of Appeals reversed a district court decision which interpreted *McDonnell Douglas* to require the burden of proof on the defendant "to estab-

lish by clear and convincing evidence that the plaintiff would not have received the position even absent the discrimination." *Ambush*, 620 F.2d at 1054. The *Burdine* decision does not alter the rules of proof as articulated in *McDonnell Douglas* and *Ambush*, and as applied by this court in the case at bar.

■ The *McDonnell Douglas* formula for proof of a prima facie case, as adapted to a termination of employment, was met by the plaintiff at trial.[2] The evidence established that the plaintiff was an employee with seniority with the defendant company; an agreement between the employees and the defendant provided that the seniority rights of the workers would be respected when a reduction in force occurred. It was undisputed at trial that the defendant, required to reduce the number of employees working as guards at its Radford Ammunition Plant, terminated the plaintiff, a male, and retained in guard positions females with much less seniority than the plaintiff. The parties stipulated that the plaintiff's work was satisfactory, and that had the plaintiff been female, he would not have been discharged.

Once the plaintiff established this prima facie case, the defendant had the burden of articulating a legitimate, nondiscriminatory reason for retaining less senior women in guard positions while discharging men with greater seniority from employment as guards. *Board of Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978); *McDonnell Douglas, supra.* The reason the defendant gave for retaining female guards with less seniority was that the female guards were needed to search female employees. It is the opinion of this court that the defend-

theory of disparate treatment, and the court will consider the burden of proof issue accordingly.

**2.** *McDonnell Douglas* established a formula for a prima facie case of racial discrimination in refusing to rehire an employee. The Court noted, however, that "[t]he facts necessarily will vary in Title VII cases, and the specification [in *McDonnell Douglas*] of the prima facie

proof required from [the Title VII plaintiff] is not necessarily applicable in every respect to differing factual situations." *McDonnell Douglas*, 411 U.S. at 802, n. 13, 93 S.Ct. at 1824, n. 13. *See, e. g., International Brotherhood of Teamsters v. United States*, 431 U.S. at 358, 97 S.Ct. at 1866; *Wright v. National Archives & Records Service*, 609 F.2d 702 (4th Cir. 1979).

ant's explanation did not articulate a legitimate, nondiscriminatory reason which dispelled the prima facie case established by the plaintiff.

Testimony indicated that due to the possibility of explosions, security is a primary concern at the defendant's Radford Ammunition Plant. At the time of the plaintiff's employment, guards were placed at each of several gates through which employees entered and exited the plant. To prevent prohibited items such as firearms, alcoholic beverages, and matches from being brought into the plant, employees were observed as they entered; the guards also checked employees as they exited to insure that ammunition was not removed from the plant. Guards were required to physically search every tenth person for contraband. Persons to be searched were chosen at random.

There were some female employees and some female guards at the plant during 1974. The defendant did not establish the exact number of female guards or female employees compared to the number of males; testimony indicated there were more males than females employed, both in the plant and as guards. Former managers of the company testified that, for policy reasons, female guards were necessary to avoid a situation where male guards would be physically searching female employees.[3] The defendant's testimony indicated that, when faced with instructions to reduce the guard force, management made no attempt to limit women employees' access to the plant through specific gates or otherwise utilize female guards in such a way that would require fewer female guards to be employed. The defendant reduced the guard force by discharging several male guards; all the female guards then employed with the company were retained. The plaintiff had accrued more seniority than any of the female guards.

This court does not doubt that female guards were required for security at the plant. The court stated in the memorandum opinion issued at the close of trial that "the defendant proved by a preponderance of the evidence that it was necessary that females be employed at Hercules to search other females."[4] However, the mere statement that female guards were necessary at the plant does not, by itself, articulate a legitimate, nondiscriminatory reason for retaining every female guard then employed and discharging male guards, who had seniority. Presumably, male guards were also necessary at the plant; several males were retained when the plaintiff was discharged, and there were many more males than females employed at the plant. The defendants presented no testimony which would connect the necessity of employing female guards with the necessity of discharging the plaintiff.

This court does not suggest that the defendant had a burden of persuasion in going forward with a statement of its reason for discharging the plaintiff. But, clearly, just any reason will not suffice to dispel a prima facie case of employment discrimination. The defendant's burden in a Title VII action has been variously described in terms of "articulating" a nondiscriminatory reason, *McDonnell Douglas, supra,* 411 U.S. at 802, 93 S.Ct. at 1824, as a burden of "proof" of the reason, *Furnco,* 438 U.S. at 578, 98 S.Ct. at 2950, and as a "burden of production, of going forward" with a reason, *Wright, supra,* at 702. In *Burdine,* the United States Supreme Court clarified the nature of the burden that shifts to the defendant:

The burden that shifts to the defendant, therefore, is to rebut the presumption of discrimination by producing evi-

---

**3.** Testimony indicated that individual guards varied in the method and frequency of searches. It was clear from the testimony that, generally, some form of a "pat down" search was utilized on approximately ten percent of the entering and exiting employees. At no time were strip searches routinely used.

**4.** This inadvertent recitation merely indicates that the defendant actually proved at trial by a preponderance of the evidence that female guards were necessary. However, the defendant was not required to prove anything by a preponderance of the evidence, and at no time did the court place upon it the burden of doing so.

dence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. The defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry procds [sic] to a new level of specificity. Placing this burden of production on the defendant thus serves simultaneously to meet the plaintiff's prima facie case by presenting a legitimate reason for the action and to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext. The sufficiency of the defendant's evidence should be evaluated by the extent to which it fulfills these functions.

*Burdine, supra,* at ——, 101 S.Ct. at 1094 (citation and footnotes omitted).

The defendant in the case at bar did not give a "clear and reasonably specific" explanation of its "legitimate reason" for discharging the plaintiff. *Id.* at ——, 101 S.Ct. at 1096. It did not "clearly set forth, through the introduction of admissible evidence, the reasons for plaintiff's rejection." *Id.* at ——, 101 S.Ct. at 1094. The defendant merely stated what was, through lack of further embellishment, in effect a nonsequitur: that female guards were necessary. That statement is not sufficient to dispel the plaintiff's prima facie case.

## II.

The defendant also objects to what it characterizes as an emphasis at trial on whether the company explored alternatives to its established approach to the problem of searching female employees. The defendant states that this emphasis on alternatives placed a burden of actual proof upon the defendant, in contradiction of the law as stated in the *McDonnell Douglas* and *Burdine* opinions.

At trial, the defendant attempted to establish a bona fide occupational qualification (bfoq) defense pursuant to § 703(e) of Title VII, 42 U.S.C. § 2000e–2(e), which permits sex-based discrimination "in those certain instances where . . . sex . . . is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise." The defendant alleged that because female guards were necessary to search female employees, the company was required to retain all the female guards employed at the time of the reduction in force, thus justifying the company's discharge of the plaintiff.

The bfoq exception is "an extremely narrow exception to the general prohibition of discrimination on the basis of sex." *Dothard v. Rawlinson,* 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977). The employer relying on the bfoq exception must demonstrate that the normal operation of his business required members of one sex only to perform the duties of the job involved. *Diaz v. Pan American World Airways,* 442 F.2d 385, *cert. denied* 404 U.S. 950, 92 S.Ct. 275, 30 L.Ed.2d 267 (1971); *Weeks v. Southern Bell Telephone & Telegraph Co.,* 5 Cir., 408 F.2d 228 (1969). A consideration of the reasonable alternatives, if any, available to an employer in the operation of his business is often essential to a bfoq defense. *Cf. Dothard v. Rawlinson, supra,* 433 U.S., at 332, 97 S.Ct. at 2728 ("[i]f the job-related quality that the appellants identify is bona fide, their purpose could be achieved by adopting and validating a test for applicants that measures strength directly [in lieu of the test used]"); *Albemarle Paper Co. v. Moody, supra,* 422 U.S. at 425, 95 S.Ct. at 2375, quoting *McDonnell Douglas, supra,* 411 U.S. at 801, 93 S.Ct. at 1823 ("[i]f the employer proves that the challenged requirements are job related, the plaintiff may then show that other selection devices

without a similar discriminatory effect would also 'serve the employer's legitimate interest in efficient and trustworthy workmanship' "). *See also Robinson v. Lorillard Corp.,* 444 F.2d 791 (4th Cir. 1971).

■ In the case at bar, the defendant established that female guards were necessary to search female employees. However, the defendant failed to establish that business necessity therefore required the company to discharge male guards, retaining less senior female guards. The alternatives available to the company in dealing with its security requirements were properly explored in the context of the company's reliance on a bfoq defense.

The plaintiff having established a prima facie case of sexual discrimination, and the defendant having failed to articulate a legitimate, nondiscriminatory reason for its actions, judgment was entered for the plaintiff in this case. Having considered the defendant's motion for relief from the judgment, this court is of the opinion that at trial, the court was under no misapprehension of the law in Title VII cases as to burden of proof.[5] The court finds nothing in the *Burdine* opinion which would alter the judgment previously entered. Accordingly, the defendant's motion is denied.

### III.

■ Because the court has been requested to review its decision in light of *Burdine*, the court has also reconsidered its opinion regarding the award of damages in view of the recent Fourth Circuit Court of Appeals decision in *Equal Employment Opportunity Commission v. Ford Motor Company,* 645 F.2d 183 (4th Cir. 1981). It is clear from that decision that a person who has been discriminated against does not have to accept an offer of reemployment where back pay has not been offered. In the case at bar, the plaintiff received an offer of reemployment which he declined,

without making any effort to ascertain the terms of the offer. His testimony showed that at that time he was employed elsewhere and was earning more than his previous guard position had paid. For that reason, he simply was not interested in accepting reemployment under any conditions.

Due to the plaintiff's refusal of the offer of reemployment, the court had limited the amount of back pay awarded to the plaintiff. This court finds nothing inconsistent between the opinion in *Ford* and the award in the case at bar.

### IV.

In the final order entered by the court in this case, the parties were instructed to request that the court reinstate this case on the docket if they were unable to agree as to the exact amount of back pay and attorney's fees to be awarded. At this time, neither party has petitioned the court to conduct a hearing on these issues. However, the court does not consider that a final order has been entered in this case for purposes of appeal; therefore, the time period in which the defendant may appeal has not begun to toll. Unless one of the parties requests a hearing as to the amount of damages and attorney's fees to be awarded, the order entered in accordance with this memorandum opinion shall be final and appealable within ten (10) days of the date it is entered. An appropriate order shall issue.

---

**5.** This court is aware that instructions given to an advisory jury are not subject to review on appeal. Nevertheless, the instructions given in the instant case indicate the court's application at trial of the law of burden of proof. Those instructions clearly state that the plaintiff has the burden of proof by a preponderance of the evidence and that the burden never shifts. The instructions also discuss the requirements of establishing a bfoq defense.