EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellant, Cross-Appellee,

v.

ST. ANNE'S HOSPITAL OF CHICAGO, INC., Defendant-Appellee, Cross-Appellant.

No. 80–2285, 80–2349.

United States Court of Appeals, Seventh Circuit.

Argued May 1, 1981.

Decided Nov. 4, 1981.

Rehearing Denied March 11, 1982.

Warren Duplinsky, Equal Employment Opportunity Commission, Washington, D. C., for plaintiff-appellant, cross-appellee.

Richard H. Schnadig, Vedder, Price Kaufman, Kammholz, Chicago, Ill., for defendant-appellee, cross-appellant.

Before SWYGERT, Senior Circuit Judge, and PELL and SPRECHER, Circuit Judges.

SWYGERT, Senior Circuit Judge.

The Equal Employment Opportunity Commission appeals from the dismissal of its complaint brought under section 704(a) of Title VII, 42 U.S.C. § 2000e–3(a), alleging that the defendant hospital discharged its employee Barbara Herzon because she hired a black man to fill a position in her department. The district judge held that the Commission had failed to satisfy the jurisdictional prerequisites to suit because it did not attempt conciliation prior to issuing its reasonable cause determination. We conclude that conciliation efforts prior to the issuance of a reasonable cause determination are not required by the Equal Employment Opportunity Act ("the Act"), 42 U.S.C. §§ 2000e *et seq.*, and that the Commission has met the requirements for suit. We also hold that the Commission has stated a claim under section 704(a), because although it was a threatening caller and not the employer who objected to Herzon's hiring of a black man, the callers' threats were allegedly a reason for the discharge. Accordingly, we reverse.

I

According to the facts as alleged by the Commission, Barbara Herzon was the Director of Communications, in charge of the security department at St. Anne's Hospital, located in Chicago. On March 1, 1978, she hired a black man to fill the position of consumer services representative in her department. The person Herzon hired was the first black consumer services representative employed by St. Anne's. Later that day, the hospital began receiving bomb threats from one or more persons claiming membership in the American Nazi Party. The callers announced their intention to eliminate blacks and Jews, and one caller stated: "I am going to fix that bitch Barbara, head of security, who hired that black

assistant." In addition to bomb threats, several unexplained fires were started at the hospital. A hospital administrator asked Herzon to resign or be discharged, it is asserted, because Herzon was an irritant to the person or persons making the calls and/or setting the fires.

In May 1978, Herzon filed a charge of discrimination with the Commission. She stated that she was told that she must resign because of the bomb threats and because the hospital wanted more security which could be better provided by a male. At that time, Herzon believed and accordingly alleged that she was discharged because she was Jewish and a woman.

Irving Kossy, the Commission specialist assigned to Herzon's case, began his investigation by sending a questionnaire to St. Anne's requesting information about Herzon's discharge. Kossy discussed the possibility of settlement first with St. Anne's attorney and later at a factfinding conference attended by the parties and their attorneys.

Subsequent to those events, Kossy obtained copies of the police reports concerning the bomb threats and fires. On discovering from those records that the callers had referred to Herzon's hiring of a black employee, Kossy proceeded to interview a *Chicago Tribune* employee and four St. Anne's employees, all of whom had received threatening calls. At some time prior to September 14, 1978, Kossy telephoned St. Anne's attorney and informed her that he intended to recommend that a reasonable cause determination be issued. He stated that the basis for the determination would not be sex or religious discrimination but retaliation, because his investigation indicated that Herzon's hiring of a black employee was a reason for her termination.

St. Anne's offered no further evidence after that discussion, and on September 18, 1978 the Commission issued its determination finding reasonable cause to believe that St. Anne's had retaliated against Herzon. Both Herzon and St. Anne's were invited to participate in conciliation discussions and each was given ten days to respond to the invitation. St. Anne's failed to respond, and on October 12, 1978, the parties were notified that conciliation efforts were deemed unsuccessful. In May 1979, the Commission filed its action in the United States District Court for the Northern District of Illinois alleging that St. Anne's had violated section 704(a) of Title VII, 42 U.S.C. § 2000e–3(a), by constructively discharging Herzon because of her opposition to practices made unlawful by Title VII.

The district court held that the Commission had failed to satisfy the prerequisites to suit because it had not sought conciliation regarding the charge of retaliatory discharge before issuing its reasonable cause determination. The case was dismissed without prejudice in order to allow for conciliation. The Commission appeals from the dismissal and St. Anne's cross-appeals on the basis that the case should have been dismissed with prejudice.

II

The first issue concerns the fact that the Commission began by investigating a charge of sex and religious discrimination but found reasonable cause to believe instead that Herzon was discharged in retaliation for hiring a black employee. St. Anne's, the defendant-appellee, concedes that the judicial complaint alleging retaliation is "reasonably related" to Herzon's original discrimination charge under our holding in *Jenkins v. Blue Cross Mutual Hospital Ins., Inc.*, 538 F.2d 164 (7th Cir.) (*en banc*), *cert. denied*, 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976). It is agreed therefore, as the district court noted, that it was unnecessary for the Commission to initiate a new charge on the retaliation claim.

Moreover, both parties assert that the district court erred in holding that the Commission was required to attempt conciliation before issuing its reasonable cause determination. Section 706(f)(1) of Title VII, 42 U.S.C. § 2000e–5(f)(1), authorizes the Commission to bring an action in federal court "[i]f within thirty days after a

charge is filed with the Commission . . . the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission." We agree that there is no requirement that an invitation to conciliate be issued prior to the reasonable cause determination. Such a requirement would in fact be illogical because prior to the cause determination, there has been no finding by the agency that there is an unlawful employment practice to be eliminated. Conciliation according to the Act is "to eliminate [an] unlawful employment practice. . . ." 42 U.S.C. § 2000e–5(b).[1]

While conceding that conciliation is not the issue, St. Anne's argues that the district judge was correct in holding that the Commission failed to satisfy the jurisdictional prerequisites to suit. The hospital argues that the Commission failed to investigate adequately the section 704 retaliation claim which it later sought to conciliate. Although notified that a reasonable cause determination based on retaliatory discharge would issue, the defendant contends that it was denied the opportunity to produce information that could have altered the agency's conclusion.

We reject the defendant's assertion. A reasonable cause determination is not to adjudicate a claim but to notify an employer of the Commission's findings. *EEOC v. Chesapeake & O. Ry.*, 577 F.2d 229 (4th Cir. 1978). There is no requirement that the agency begin its investigation anew on discovering a reasonably-related theory of liability. In *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 372 n.32, 97 S.Ct. 2447, 2457–58, n.32, 53 L.Ed.2d 402 (1977), the Supreme Court stated as much when it noted, speaking of the statutory requirement, that an employer be notified that a charge was filed within ten days of the filing: "Prompt notice of reasonable-cause determination also serves to cure any deficiencies in the 10-day notice that may result from EEOC amendment of the claimed violation after investigation." *See also EEOC v. Chesapeake & O. Ry.*, *supra*, holding that an investigation of the initial charge followed by notification to the employer of the basis of the reasonable cause determination and an invitation to conciliate complies with section 706(b) of the Act, 42 U.S.C. § 2000e–5(b).

■ In our case, St. Anne's was informed prior to the reasonable cause determination that retaliatory discharge had become the issue. At that point St. Anne's made no attempt to offer additional evidence. Subsequently, the hospital was notified that the reasonable cause determination had issued, and it was invited by the Commission to conciliate. The defendant was not therefore, as the district court erroneously concluded, "prevented from correcting any shortcomings in its employment practices before formal judicial proceedings commence[d]." We conclude that the Commission satisfied all necessary prerequisites to suit and that dismissal on that basis was erroneous.[2]

### III

The defendant argues next that even if the district court erred in its determination on the procedural issue, the judgment should be affirmed because the Commission has failed to state an actionable claim under section 704(a) of Title VII, which provides in relevant part: "It shall be an unlawful

---

1. The Commission's regulations also make clear that conciliation occurs after rather than before a reasonable cause determination is issued:

   Where the Commission determines that there is reasonable cause to believe that an unlawful employment practice has occurred or is occurring, it shall endeavor to eliminate such practice by informal methods of conference, conciliation and persuasion.

   29 C.F.R. § 1601.24(a).

2. The cases cited by the defendant are inapposite. *EEOC v. Bailey Co.*, 563 F.2d 439 (6th Cir. 1977), *cert. denied*, 435 U.S. 915, 98 S.Ct. 1468, 55 L.Ed.2d 506 (1978), concerned a new charge unrelated to the original party's charge and involving different persons. In *Ferguson v. Mobil Oil Corp.*, 443 F.Supp. 1334 (S.D.N.Y. 1978), *aff'd without opinion*, 607 F.2d 995 (2d Cir. 1979), the dismissal was based on the fact that the claim was not reasonably related to the original charge.

employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this title. . . ." 42 U.S.C. § 2000e–3.[3] In its complaint, the Commission asserts that Herzon was constructively discharged because of her opposition to practices made unlawful by Title VII. Herzon lost her job, it is argued, because she hired a black man to fill a position in her department.

■ The defendant contends that the Commission has failed to state a claim because it has not alleged that St. Anne's engaged in an unlawful practice that Herzon opposed. St. Anne's thus argues that the "opposition clause" of section 704(a) applies solely to an individual who opposes a practice of the employer that has unlawfully discriminated against minorities. We disagree with St. Anne's narrow interpretation of the opposition clause and conclude that Title VII does not apply solely to those actions which are in opposition to past unlawful practices of the employer.[4]

In this case, Herzon was herself able to make hiring decisions and was in that sense in a position traditionally associated with the employer in Title VII cases. At this stage of the proceedings, we must assume that Herzon used her authority to hire a black employee because she considered him the most qualified applicant for the job.

3. The defendant argued for dismissal on this alternative ground in the district court, but the district judge did not find it necessary to decide whether the Commission had stated a claim because he dismissed the case on the jurisdictional basis discussed, *supra.*

4. Thus St. Anne's cannot refute the Commission's claim by pointing to the fact that it has not been shown to have discriminated against minorities in the past. Our inquiry in this case is whether an individual who hires a minority applicant because she considers him the best person for the job and is discharged because she hired a minority applicant is protected by section 704(a) of the Act. If St. Anne's has a satisfactory hiring record, it is undoubtedly the result of the activities of employees like Herzon complying fully with Title VII. We note only that the parties agree that the employee Herzon hired was the first black consumer services representative at St. Anne's.

Whatever the status of St. Anne's past practices with regard to the hiring of minority candidates, a failure to hire the applicant who otherwise would have been selected but for his race would have been a violation of Title VII for which Herzon and the defendant would have been liable.[5] As the Supreme Court has noted, an employer's past practices do not relieve him of the statutory obligation to give unbiased consideration to each job applicant:

> It is clear beyond cavil that the obligation imposed by Title VII is to provide an equal opportunity for *each* applicant regardless of race, without regard to whether members of the applicant's race are already proportionately represented in the work force.

*Furnco Construction Co. v. Waters,* 438 U.S. 567, 579, 98 S.Ct. 2943, 2951, 57 L.Ed.2d 957 (1978) (emphasis in original).

It is manifest that an employee without hiring authority who witnessed the rejection of a job applicant on the basis of that applicant's race could protest the unlawful employment practice and be protected from discharge by section 704(a). In our view, it must be equally clear that an employee with hiring authority who hires the applicant she believes is best qualified and subsequently is discharged because the applicant she hired is black is similarly protected.[6]

5. In *Silver v. KCA, Inc.,* 586 F.2d 138 (9th Cir. 1978), cited by the defendant, the Ninth Circuit held that an employee who alleged that she was discharged for opposing a racial slur by a fellow employee did not state a claim under section 704(a). The court noted that the racial slur was not alleged to have any relation to any actual or apparent employment practice of the employer. *Silver* is thus distinguishable from our case because here it is alleged that the reasons for her discharge was the lawful hiring decision she made on behalf of her employer. The Commission asserts that Herzon was discharged for taking an action on behalf of her employer that was required by Title VII—hiring the most qualified applicant for the job regardless of race.

6. We are not, as the defendant contends, extending Title VII protection to "a new class of persons, *i. e.,* those who hire statutorily-protected minorities." The protection is extended only to those who hire statutorily-protected mi-

Surely, it would impede voluntary compliance with Title VII, a primary aim of section 704, if employees in decision-making positions who hired minority applicants had to fear losing their own jobs because of the racial bias of others. Section 704(a) was specifically designed to encourage employees to act to protect Title VII rights, and that is what Herzon has assertedly done. We agree with the Commission that Herzon has demonstrated her opposition to unlawful discrimination by hiring the applicant she considered most qualified for the job without regard to his race.

St. Anne's points out, however, that the reason for the discharge was the threats and not Herzon's hiring decision. A similar argument was made in the so-called "customer preference" cases that have arisen under Title VII. See *Diaz v. Pan Am. World Airways, Inc.,* 442 F.2d 385 (5th Cir.), *cert. denied,* 404 U.S. 950, 92 S.Ct. 275, 30 L.Ed.2d 267 (1971) and its progeny, including most recently, *Fernandez v. Wynn Oil Co.,* 653 F.2d 1273 (9th Cir. 1981).[7] In *Diaz,* the employer argued that its hiring policy was necessary to protect the business from losing customers. The issue there was whether Title VII permitted the employer to reject job applicants on the basis of sex because the prejudicial preferences of customers were a threat to the business. In our view, the principle that has been established in the customer preference cases is applicable here:

> [I]t would be totally anomalous if we were to allow the preferences and prejudices of the customers to determine whether the ... discrimination was valid. Indeed, it was to a large extent, these very prejudices the Act was meant to overcome. Thus, we feel that customer

preference may be taken into account only when it is based on the company's inability to perform the primary function or service it offers.

*Diaz v. Pan Am. World Airways, Inc.,* 442 F.2d at 389.

In our case, the discharge of Herzon is also alleged to be for self-protective reasons. The issue is whether Title VII permits the employer to discharge an employee for hiring a black man because the racial animus of an anonymous caller threatens the security of the hospital. It would be a sad day for the enforcement of Title VII if every unlawful threat of violence motivated by racial hate could make lawful the discharge of an employee for a hiring decision that was itself required by the Act. As was noted in the customer-preference context, the animus against which the Act was directed should not be permitted to undermine and deter compliance with the Act.

At the same time, neither we nor the employer can ignore a possible risk to the lives of innocent persons. We conclude that an extension of the *Diaz* principle best accommodates the conflicting interests at issue in this case. The discharge of Herzon for being an irritant to the threatening caller was lawful under Title VII only if the hospital demonstrates that no alternative course of action was available and that it could not continue to function safely with Herzon in its employ.[8] Otherwise, the discharge of Herzon, assuming that the facts are as the Commission has alleged, was discriminatory and in violation of section 704(a) of the Act. At this stage of the proceedings, we see no reason to assume that St. Anne's could not have enlisted adequate police protection and investigation to

norities and *for that reason* are discharged from their employment.

**7.** In *Diaz v. Pan Am. World Airways, Inc.,* the issue was whether customers' preference for employees of one sex constituted a bona fide occupational qualification under 42 U.S.C. § 2000e–2(a)(1). The statutory bona fide occupational qualification exception does not apply to racial discrimination. 42 U.S.C. § 2000e(2)(a)(1). In our case, the issue is not the bona fides of a qualification but rather the

legitimacy of a business reason advanced by the employer as a reason for the discharge.

**8.** The fact that a few unexplained fires were set at the hospital at the time of the bomb threats does not on this record rise to the level of disruption that could justify the discharge, especially where as here there is no indication that other methods of protecting the hospital were utilized.

alleviate the threat without discharging Herzon.

Because we conclude that the Commission has met the prerequisites to suit and has stated an actionable claim, we reverse and remand for proceedings consistent with this opinion.[9]

PELL, Circuit Judge, dissenting.

While the ultimate result reached in this case was one that apparently was not contemplated when the charge was originally filed with the EEOC[1] but assuming that the majority opinion nevertheless was procedurally justified in arriving at the *ratio decidendi* it did, notwithstanding the somewhat tortuous path the litigation took to get there, I cannot, on the facts of this case, agree with the principles applied in determining that an actionable claim has been demonstrated, and I therefore respectfully dissent.

I do accept for the present purposes the statement of what happened as outlined in the majority opinion. Herzon hired a black man to fill a position in the security department which she headed. He was the first black person in the consumer services section of the department. On the very same day, the hospital began receiving bomb threats, only one of which referred to Herzon. In addition to the numerous bomb threats several unexplained fires were started at the hospital. It seems fairly evident that the precipitating causes for the constructive discharge of Herzon were the threatening calls and the setting of the fires. There is no showing in the record as far as I have been able to determine whether the black man himself was discharged.

The majority opinion states that our inquiry in this case is whether an individual who hires a minority applicant because she considers him the best person for the job, and is discharged because she hired a minority applicant, is protected by section 704(a) of the Act. I cannot quarrel too

much with the result the majority reached if this were the issue or were the sole inquiry. On the facts of this case, however, it would seem to me that the determinative issue is whether the threats and firesetting that occurred here, which were arguably related to the hiring of the black man, were a justification for the discharge. I find no indication that St. Anne's Hospital caused her constructively to be discharged because she hired the black person. Rather it was because of the hiring that bombing threats and firesetting did occur, and it was the threats and firesetting which caused the employer to regard it as necessary that she be discharged.

The majority opinion ultimately reaches an analysis of whether the threats and fires justified the action taken by the hospital. Reliance is placed on the so-called "customer preference" cases arising under Title VII, particularly on *Diaz v. Pan Am World Airways, Inc.*, 442 F.2d 385 (5th Cir.), *cert. denied*, 404 U.S. 950, 92 S.Ct. 275, 30 L.Ed.2d 267 (1971). The situation however was quite different in *Diaz* where the Pan Am's passengers overwhelmingly preferred to be served by female stewardesses, and as a result, males were not hired because of their sex. The question before the Fifth Circuit was whether, for the job of flight cabin attendant, being a female was a "bona fide occupational qualification reasonably necessary to the normal operation" of the airline's business. It is of interest to note that in the discussion of the issue by the court there was reference to the fact that many airlines, including Pan Am, had utilized both men and women flight cabin attendants in the past, and even Pan Am at the time of the suit had 283 male stewards employed on some of its foreign flights. The court also observed:

No one has suggested that having male stewards will so seriously affect the operation of an airline as to jeopardize or even minimize its ability to provide safe transportation from one place to another.

9. Because we hold that the dismissal was erroneous, we do not reach the issue of prejudice raised by the defendant in its cross-appeal.

1. The charge as originally filed alleged employment discrimination based on Herzon's sex, female, and her religion, Jewish.

442 F.2d at 388. That is not the situation in the present case. I find it difficult to conceive, except perhaps for the traditional crowded theater, any climate or situation in which either a bombing or a fire could be more disastrous than in a hospital where many patients could not be successfully removed in the event of such a catastrophe. It may well be that the people at St. Anne's overreacted but this also is understandable as they were charged with the preservation of the lives and well-being of a great many people and the duty of securing that welfare. It certainly could have seemed, and apparently did seem, appropriate to place the safety and welfare of the patients above taking a stand which might have jeopardized that safety and welfare. I have difficulty in faulting the hospital for overreacting. It would take a person of great calmness not to react as the hospital officials did.

What I have said here in no way disagrees with the expression in the majority opinion that it would be a sad day if every unqualified threat of violence could make lawful the discharge of an employee for a hiring decision that was itself required by the Act. The situation in this hospital, however, was not "every unqualified threat" but rather was a particularized series of threats and actual fires. As the Fifth Circuit implicitly recognized in *Diaz* even a minimizing of the ability to provide safe airplane transportation might have produced a different result. In the wording of *Diaz*, but unlike that case, it appears that the hospital authorities were applying a business necessity test, not a business convenience test, which was the basis of the customer preference cases upon which the majority opinion relies.

In sum, and even assuming an overreaction, we are, or should be, concerned here with whether there was a violation of a statute directed at the elimination of racial discrimination, and not with a questionably poor business judgment call. Yet, it is the latter rather than the former which the majority finds dispositive.

It is unfortunate that in the interest of discouraging discrimination the hospital did not endeavor to take some other steps, but no one, of course, will ever know whether taking other steps might have been followed by a disaster of substantial extent.